DECISION AND JUDGMENT ENTRY
{¶ 1} These consolidated appeals involve a priority dispute among several mortgages that were filed and time stamped at the exact same time.[1] Tyrone and Lori Brinager and Farmers Bank Savings Co. (Farmers) appeal a decision that awarded priority respectively to Peoples Bank (Peoples), Home National Bank (Home National), and Farmers . The Brinagers and Farmers both contend the judgment of the trial court was against the manifest weight of the evidence. Despite the fact the mortgages were recorded at the same time, the Brinagers argue their mortgage should have first priority due to an agreement between them and Home National. However, the record contains some support for the trial court's finding that the Brinagers failed to prove the existence of a mutual agreement on priorities by clear and convincing evidence. Mr. Brinager consistently stated he "assumed" his mortgage held priority and Home National's representatives denied any recollection of agreeing to grant priority to the Brinagers. Thus, the trial court's conclusion that the Brinagers did not carry their burden of proof is not against the manifest weight of the evidence.
 {¶ 2} Farmers, which took a partial assignment of Brinagers' interest, makes essentially the same argument as they do. Accordingly, we reject it for the same reasons.
 {¶ 3} The Brinagers also contend that the trial court erred in failing to address the effect of reservations contained in the deed from the Brinagers to a subsequent grantee. We summarily overrule the Brinagers' second contention because they did not brief the issue. *Page 3 
 {¶ 4} Finally, Farmers also contends that the trial court erred in awarding Peoples Bank first priority because Peoples had obtained an attorney's title opinion that concludes the Brinagers had top priority. Essentially, Farmers contends Peoples is estopped from claiming priority because the title opinion it solicited indicated the Brinager lien was superior. Because the title opinion represents the subsequent view of a third party rather than a contemporaneous understanding of the parties to the transaction, it has little relevance to the issue of priority in this case. Furthermore, we conclude that Farmers cannot assert a claim of estoppel against Peoples because Farmers cannot and did not rely upon a title opinion issued to another party. Nor did it rely upon any promise or conduct of Home National.
 I. Facts {¶ 5} This case involves the priority of several mortgages on real property owned by Alexander Buckallew, who acquired it from the Brinagers in 2001. As part of the transaction, Buckallew granted three mortgages: (1) to Telmark LLC in the open-end amount of $150,000, (2) to Home National Bank in the open-end amount of $600,000, and (3) to the Tyrone and Lori Brinager for $331,950. Each mortgage was recorded on the same date, March 9, 2001, and at the same time, 1:11 pm. However, in the record book, the Telmark mortgage appears first at Volume 121, Page 195, followed by the Home National mortgage at Volume 121, Page 205, and finally, the Brinagers mortgage appears at Volume 121, Page 213. *Page 4 
 {¶ 6} Subsequently, Telmark released its mortgage, Home National subordinated $335,000 of its mortgage interest to Peoples Bank, and the Brinagers assigned $100,000 of its mortgage interest to Farmers Bank. When Buckallew defaulted on his mortgage payments, Home National filed a foreclosure joining all necessary parties.
 {¶ 7} Because Telmark released its mortgage, the controversy in this case involves the order of priority between the mortgage granted to Home National, along with its subordination to Peoples, and the mortgage granted to the Brinagers, along with its partial assignment to Farmers.
 {¶ 8} The Brinagers argue their mortgage should have top priority because on or before closing Peoples agreed that Brinagers' interest would be first. Farmers, through the partial assignment of the Brinager mortgage, argues that it is in first position by virtue of the assignment.
 {¶ 9} Peoples contends it has first priority to the extent of $335,000 as a result of its subordination agreement with Home National. Home National and Peoples entered into an agreement in which Home National "subrogated" $335,000 of its $600,000 due from the Buckallews. The parties reasoned that Home National would "subrogate" to Peoples so that Peoples could pay off the Buckallews' pre-existing debt to Telmark, which had priority ahead of Home National. Under the Restatement of the Law 3d, Mortgages (1997), Section 7.6, "[w]here subrogation to a mortgage is sought, the entire obligation secured by the mortgage must be discharged. Partial subrogation to a mortgage is not permitted." *Page 5 
 {¶ 10} The transaction between Home National and Peoples appears to be an act of subordination between two creditors of the same debtor, rather than a subrogation. See, Total Technical Services v. Kafoure Associates,Inc. (1986), Cuyahoga App. Nos. 51339 and 51401, 1986 WL 13687.
 {¶ 11} However, since the appellants have not raised this issue on appeal, we need not address it or its impact on the court's order of distribution. See also, In Re Kobak (Bkrtry. N.D. Ohio, 06-28-2002) 280 B.R. 164, which involved lien subordination between first and third mortgages, whereby first mortgagee relinquished priority that it would otherwise have over third mortgagee. The subordination agreement did not affect the second mortgagee either positively or negatively. It simply required that if the property were sold, those proceeds otherwise due the first mortgagee would be paid initially to the third mortgagee to the extent of its claim. The court's order of distribution in this case takes that approach.
 {¶ 12} In any event, Home National asserts it is in second position after People's $335,000 has been satisfied, up to the first $600,000 realized at foreclosure. Therefore, Home National argues that it is in second position up to $265,000 ($600,000 - $335,000 = 265,000).
 {¶ 13} Because of the simultaneous time-stamps, the court looked at the intent of the parties (Home National and Brinager) at the time they entered into the transactions and recorded the mortgages to determine the order of priority. The court heard testimony from the president of Home National, a loan officer from Peoples, and Mr. Brinager. The trial court concluded that the evidence did *Page 6 
not support a finding that at the time of closing, Home National and the Brinagers agreed that the Brinagers' mortgage would have priority over Home National's mortgage.
 {¶ 14} Accordingly, the trial court concluded that the order of priority of the two mortgages would be based upon the order in which the mortgages appeared in the record book. Because the Home National mortgage appeared in the book prior to the Brinager mortgage, and had a lower page number, the court determined the order of priority to be: (1) first to Peoples up to $335,000, (2) second to Home National for the balance of its original mortgage after the subordination to Peoples, i.e. $265,000, and (3) third to Farmers for $100,000, through assignment from the Brinagers.
 {¶ 15} The Brinagers and Farmers filed separate appeals. We suasponte consolidated the two appeals to issue a single decision.
 {¶ 16} The Brinagers assert the following two assignments of error:
 I. THE JUDGMENT RENDERED BY THE COURT OF COMMON PLEAS, MEIGS COUNTY, OHIO, ON THE 23RD DAY OF FEBRUARY, 2006, IS ERRONEOUS IN THAT THAT SAID JUDGMENT IS NOT SUPPORTED BY THE EVIDENCE AND IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND IS CONTRARY TO LAW REGARDING THE PRIORITY OF THE MORTGAGES GIVEN BY THE APPELLEE, BUCKALLEW, ON HIS REAL ESTATE.
 II.THE LOWER COURT FAILED TO ADDRESS THE ISSUE CONCERNING THE RESERVATIONS CONTAINED IN THE DEED FROM THE APPELLANT, CECIL TYRONE BRINAGER, TO THE APPELLEE, ALEXANDER J. BUCKALLEW. *Page 7 
 {¶ 17} Farmers asserts the following two assignments of error:
 I. WHETHER THE TRIAL COURT CORRECTLY DETERMINED THE PRIORITY AS TO THE SIMULTANEOUS FILINGS OF TWO MORTGAGES ON THE SAME REAL ESTATE?
 II.KNOWING OF THE SIMULTANEOUS FILING OF TWO (2) COMPETING MORTGAGES (APPELLANT BRINAGER AND APPELLEE HOME NATIONAL BANK) AND KNOWING THE RESULTANT PRIORITY, PER A TITLE OPINION OBTAINED BY APPELLEE PEOPLES BANK, WHETHER APPELLEE PEOPLES BANK ACQUIRED THROUGH A SUBORDINATION AGREEMENT WITH HOME NATIONAL BANK SUPERIOR RIGHTS OVER MORTGAGEE APPELLANT, CECIL TYRONE BRINAGER ET UX?
 II. Order of Priority {¶ 18} The Brinagers and Farmers contend that the trial court's judgment awarding top priority to Home National is against the manifest weight of the evidence.
 {¶ 19} We will not reverse a judgment as being against the manifest weight of the evidence so long as there is some competent, credible evidence to support the judgment. C.E. Morris Co. v. Foley Constr.Co. (1978), 54 Ohio St.2d 279, 376 N.E.2d 578, syllabus. Under this highly deferential standard of review, we do not decide whether we would have reached the same conclusion as the trial court. Hooten Equip. Co.v. Trimat, Inc., Gallia App. No. 03CA16, 2004-Ohio-1128, 2004 WL 444134. Rather, we must uphold the judgment if there is some evidence in the record from which the trial court could have reached its ultimate factual conclusions. Id. In effect, that means the trial court's judgment is not subject to reversal merely because the record contains some evidence that could reasonably support a different conclusion. We defer to the *Page 8 
trial court's role of choosing between two competing versions of events, both of which are plausible and have some factual support. In a nutshell, we will not second guess the finder of fact. We are also guided by the presumption that the trial court's factual findings are correct, since the trial judge "is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony."Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80,461 N.E.2d 1273.
 {¶ 20} Ohio Revised Code 5301.23(A) addresses the priority of mortgages and states:
 All properly executed mortgages shall be recorded in the office of the county recorder of the county in which the mortgaged premises are situated and shall take effect at the time they are delivered to the recorder for record. If two or more mortgages pertaining to the same premises are presented for record on the same day, they shall take effect in the order of their presentation. The first mortgage presented shall be the first recorded, and the first mortgage recorded shall have preference.
 {¶ 21} The statute reflects the time-honored rule of "first in time, first in right."
 {¶ 22} R.C. 317.12 addresses the duties of the county recorder upon receiving a mortgage and states:
 Upon the presentation of a deed or other instrument of writing for record, the county recorder shall indorse thereon the date, the precise time of its presentation, and a file number. Such file numbering shall be consecutive and in the order in which the instrument of writing is received for record, except financing statements, which shall have a separate series of file numbers and be filed separately, as provided by sections 1309.501 to 1309.527 of the Revised Code. Until recorded, each instrument shall be kept on file in the same numerical order, for easy reference. If required, the recorder shall, without fee, give to the person presenting such instrument a receipt naming the parties thereto, the date thereof, *Page 9 
and a brief description of the premises. When a deed or other instrument is recorded, the recorder shall indorse on it the time when recorded, and the number or letter and page of the book in which it is recorded.
 {¶ 23} When read in conjunction, we interpret these statutes to mean that it is the act of recording that sets the priorities of mortgages. When the recorder receives a mortgage, the recorder is to endorse upon it the date and time of presentation, as well as place a file number upon it. Those acts do not determine priority, but are a reference for those searching the records. SeeFranks v. Moore (1933), 48 Ohio App. 403,194 N.E. 39. It is the act of recording the mortgage, which should be in the order received, that sets the priority. R.C. 5301.23(A). Thus, the order of recording two mortgages controls their priority unless the parties agree otherwise at or prior to the recording. Franks.
 {¶ 24} The Brinagers and Farmers contend the trial court incorrectly concluded that the Home National mortgage had first priority. They argue that because the Brinagers and Home National agreed the Brinagers would have top priority, they have first and best lien despite the fact that the Home National mortgage preceded the Brinager mortgage in the record book.
 {¶ 25} In support of their argument, the Brinagers and Farmers citeFranks for the proposition that the parties can alter the general rule of "first in time, first in right" by agreement. In Franks, which also involved the simultaneous filing of several mortgages, the court determined there was clear and convincing evidence the parties agreed all the mortgages were to have equal priority and thus should be pro-rated. Id. at 411. *Page 10 
 {¶ 26} The Brinagers and Farmers contend the testimony of Bill Nease, President of Home National, and Tyrone Brinager, provides clear and convincing evidence that Home National agreed at the time of the original transaction that the Brinager mortgage would have first priority.
 {¶ 27} We have pronounced our standard of review concerning the existence of clear and convincing evidence many times. When reviewing evidentiary findings under the clear and convincing evidence burden of proof, the standard is whether the decision is supported by some competent, credible evidence. State v. Schiebel (1990),55 Ohio St.3d 71, 74 564 N.E.2d 54, 60.
 {¶ 28} At trial, Bill Nease, President of Home National, testified:
 Q. And were the Brinager's aware that in this purchase transaction they would be behind Home National Bank's mortgage?
 A. Yeah. Yeah.
 Q. Was it your understanding during this transaction that Mr. Brinager was going to remain in first position on his mortgage? Wasn't that your understanding?
 A. I . . . First position on his mortgage?
 Q. In other words, he would be ahead of Home National Bank?
 A. Uh, I really don't . . .
 Q. Didn't you make that statement to Mr. Brinager that you always felt that he was ahead of Home National Bank?
 A. I don't recall that.
 Q. Did you ever have a conversation with Tye and or Lori [Brinager] that you believed that his mortgage was in first position or ahead of Home National Bank?
 A. Uh, I don't recall that, but I could have. *Page 11 
 Q. Wasn't it the intention of Home National Bank, when they made the loan to Buckallew's that you would not be going in front of Tyrone's [Brinager] mortgage from the Buckallews?
 A. I don't recall.
Mr. Brinager testified that Mr. Nease had stated he thought Brinager was in the "driver's seat." However, this alleged statement was made after the transaction had closed. In reference to the conversations regarding the "driver's seat," Mr. Brinager gave the following answer:
 A. Bill Nease and I would talk occasionally and then I would say, "I wonder how this is all going to play out." And two or three times, I remember Bill just saying, "Well, I think you're in the driver's seat," once he subordinated . . .
 Q. Uh huh.
 A. . . . to Peoples Bank. And he said, "I think you're in a pretty good position." And, uh, I remember that happening maybe two, three times.
Mr. Nease testified that he did not recall making the "driver's seat" comments. Regardless of whether he made them, the trial court was free to determine what weight it would afford this somewhat equivocal testimony. We agree subsequent conversations may shed some light on the nature of the parties' intentions at a prior time. However, the court was not bound to accept this dialogue as clear and convincing evidence of a mutual agreement on priority. First, the trial court could have reasonably concluded the "driver's seat" comments never occurred. Second, even if they did, the court could have concluded they related to subsequent events, rather than the parties' intention at the time of execution of the mortgages. Finally, the trial court might simply have concluded that while *Page 12 
there was some evidence of the parties intent, they did not satisfy the clear and convincing evidence burden born by the Brinagers.
 {¶ 29} Mr. Brinager further testified:
 Q. . . . what was your understanding, as to during the bargaining process of selling this business, what was your understanding as to the priority of your mortgage with the Buckallews?
 A. . . . it was my understanding that Home Bank would be first in position on receivables and crops because that's the way it worked with mine. And then when it came to the real estate, that would cover my hundred thousand dollars (100,000.00) when it came to my portion of what he owed me. I just assumed that it would be . . . You know, that would be our, kind of our strength . . .
 Q. Did you have any conversations with Mr. Nease or anybody else in Home National Bank about your mortgage and whether or not you would be first in priority?
 A. Just like I stated before, I just assumed with the FSA loans, he would be first in accounts receivable, he would be first in crops and since they both turned in at the same time, that would be first in real estate.
 Q. Okay. So, you don't recall specifically discussing with Bill Nease or anyone else who would actually have a first mortgage?
 A. I knew Bill Nease was ahead of me on receivables and on the crop and I assumed that I was first on the real estate.
 Q. Okay. So, you simply assumed that you would be first.
 A. Yes.
 {¶ 30} Based on this testimony, the trial court concluded there was no clear and convincing evidence to support a finding that the parties had an agreement that Brinagers' mortgage would have priority over Home National's.
 {¶ 31} We conclude that the trial court's decision is supported by some competent, credible evidence. At best, Mr. Nease does not recall reaching any *Page 13 
mutual agreement, and Mr. Brinager's testimony revealed that he only "assumed" he had first priority. The testimony does not produce clear and convincing evidence to show that the parties reached a mutual agreement prior to or at the time of closing. Mr. Brinager simply assumed his mortgage had first priority. Without more evidence, the trial court was free to conclude the Brinagers and Farmers did not meet their burden of proof. Accordingly, we reject both parties' first assignment of error.
 III. Reservations {¶ 32} In the Brinagers' second assignment of error, they contend that the trial court erred in failing to address certain reservations contained in the deed from the Brinagers to Buckallew. The Brinagers have not advanced any argument in support of this contention. Accordingly, we need not address it. See App.R. 16.
 IV. Title Opinion {¶ 33} In its second assignment of error, Farmers contends that the trial court erred in awarding Peoples Bank priority over Brinagers' mortgage because Peoples had obtained a title opinion from its attorney stating that Brinager had top priority. After receiving this title opinion and prior to the subordination with Home National, Peoples requested Brinager to subordinate his mortgage to theirs. However, Brinager refused. Peoples then proceeded to make the loan and take a mortgage anyway.
 {¶ 34} Farmers contends that because Peoples apparently believed that it had second priority based upon the title opinion, it is estopped from claiming *Page 14 
otherwise now. Because estoppel is an equitable doctrine, its application is generally left to the discretion of the trial court. Accordingly, we review this argument under an abuse of discretion standard.
 {¶ 35} We conclude that the trial court did not err in awarding Peoples first priority despite the existence of the title opinion. The title opinion was created for Peoples by its own attorney and has no relationship to Farmers or its claims. Peoples chose to rely on a title opinion that turned out to be incorrect. Farmers did not place any reliance on it, or any conduct or promise emanating from it by Home National. Therefore the trial court did not abuse its discretion by refusing to estop People's from claiming top priority.
 {¶ 36} Accordingly, we affirm the trial court's judgment.
 JUDGMENT AFFIRMED. *Page 15 
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that Appellees recover of Appellants costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Meigs County Common Pleas Court to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
McFarland, P.J.: Concurs in Judgment and Opinion. Kline, J.: Concurs in Judgment Only.
For the Court
[1] Meigs App. Nos. 06CA2 and 06CA3 are sua sponte consolidated for purposes of decision. *Page 1