DECISION AND JUDGMENT ENTRY
{¶ 1} In this domestic action, Delbert E. Hurst ("Hurst") and Sherry S. Hurst, now known as Sherry Blevins ("Blevins"), signed a separation agreement that was approved by the trial court and incorporated into its dissolution decree in 1996. This agreement provided that Hurst would ultimately retain the marital residence. However, there was also a "side agreement," which neither of the parties disclosed to the court, that provided for Hurst to transfer the marital home to Blevins after ten years. In 2006, Blevins moved for relief from judgment on the grounds that Hurst appeared to be reneging on the side agreement. The trial court granted Blevins relief from the dissolution decree because it concluded that Hurst's previous attorney and the parties themselves committed a fraud on the court by not informing it of the side agreement. *Page 2 
 {¶ 2} First, Hurst argues that the trial court's finding that there was a side agreement is against the manifest weight of evidence. However, Blevins and her daughter both testified concerning the existence of the agreement, which was introduced as an exhibit. Because there is competent, credible evidence that Hurst promised to deed the marital home to Blevins in exchange for her assent to the dissolution decree, this finding is not against the manifest weight of the evidence.
 {¶ 3} Second, Hurst argues that the side agreement is invalid because it is inconsistent with or merged into the trial court's dissolution decree. He also argues that Blevins's motion for relief from judgment represents an improper collateral attack on a final judgment. However, a party may seek relief from a judgment that was obtained by a fraud on the court. In granting that relief, the trial court did not abuse its discretion. Hurst's previous attorney was aware of the side agreement but nonetheless represented to the court that there were no agreements other than the separation agreement. Because the court could reasonably conclude that it would not have approved of the separation agreement and granted a dissolution if it had known of the side agreement, relief from judgment was appropriate.
 {¶ 4} Third, Hurst argues that the trial court should not have considered or enforced the side agreement because it violated the Statute of Frauds. However, the trial court did not simply order specific performance of the side agreement. Instead, it remedied a fraud on the court and ensured that its judgment of dissolution reflected the actual agreement of the parties at the time of the dissolution. Thus, it was enforcing its decree rather than the side agreement, and the Statute of Frauds is inapplicable. *Page 3 
 {¶ 5} Finally, Hurst argues that the trial court ignored principles of equity in granting Blevins relief from judgment. Because the trial court could reasonably conclude that Hurst lacked clean hands, and because the evidence supports the conclusion that the mortgage Hurst paid on the house represented his share of the marital debt, we do not believe that the trial court abused its discretion. Accordingly, we affirm the judgment below.
 I. Facts {¶ 6} Hurst and Blevins obtained a dissolution on November 15, 1996, after sixteen years of marriage. The dissolution decree incorporated a separation agreement, which divided the marital property and gave Hurst the marital residence. However, the agreement allowed Blevins to live in the marital residence rent-free for 10 years from the date of dissolution, provided that she paid the homeowner's insurance and real property taxes. After this 10-year period expired, the separation agreement provided that Hurst would have exclusive possession and ownership of the marital residence. When she signed the separation agreement, Blevins was not represented by counsel. However, Hurst had an attorney who drafted the separation agreement.
 {¶ 7} The trial court conducted a hearing on the dissolution on October 18, 1996, and apparently Blevins expressed some concern about the settlement agreement. For this reason, the court continued the hearing. Because Hurst wanted to expedite the divorce, he agreed to deed the house over to Blevins if she would allow the dissolution to go forward. Blevins, in an attempt to protect herself, prepared a statement in which Hurst swore "to sign over the deed to Sherry S. Hurst, when the house and property at 69 South Brownell Street is paid in full." This statement is dated *Page 4 
November 11, 1996, and Hurst signed and had it notarized on November 12, 1996. Blevins and her daughter both testified that Blevins drafted the statement on November 11 and that Hurst returned it to her the next day. According to Blevins, Hurst told her not to mention the side agreement to the trial court. After receiving the signed document, Blevins went through with the dissolution. Unaware of what had transpired after the initial hearing, the trial court held the final hearing and issued its dissolution decree on November 15, 1996.
 {¶ 8} Ten years later at a hearing on the motion for relief from judgment, Hurst admitted signing the statement and promising to convey the house to Blevins. However, he testified that he never intended to deed the property over to her. Instead, he explained that Blevins had been harassing him to sign the paper for weeks and that he was afraid he would lose his job if he did not sign it and keep her from disrupting his work. He also testified that his previous attorney advised him that the promise had no effect and that he should sign it to stop Blevins from harassing him. The record reflects that, although Hurst's previous attorney was aware of the side agreement reached by the parties, neither he nor the parties brought the agreement to the attention of the trial court. Hurst disputed Blevins's testimony that he gave her the statement before the final hearing; he testified that he gave it only after the final hearing. He also denied telling her not to mention the side agreement to the trial court.
 {¶ 9} Both parties abided by the dissolution decree. Blevins paid the insurance and taxes on the property, and by September 2005 Hurst had paid off the mortgage. However, according to Blevins, as the 10-year period came to a close, Hurst began "making noises" that led her to believe that Hurst would not convey the property to her *Page 5 
as he promised in the side agreement. On November 14, 2006, Blevins filed a motion for relief from judgment seeking an order requiring Hurst to deed the property to her. After a hearing, the magistrate recommended granting the motion. After considering Hurst's objections, the trial court adopted the magistrate's decision and granted Blevins relief from judgment. The court explained that had it been aware of the side agreement it probably would not have approved of the dissolution of the marriage on the terms laid out in the settlement agreement.
 II. Assignments of Error {¶ 10} Hurst filed this appeal and raises five assignments of error:
 1. "The Trial Court erred in finding that a side agreement was reached between the parties prior to the hearing on the dissolution of [sic] heard on November 15, 1996 and the Courts [sic] finding that a side agreement was made is not based upon sufficient evidence and is against the manifest weight of the evidence."
 2. "Assuming that the parties entered into a side agreement prior to the dissolution judgment, such agreement was merged in the judgment, and ceased to exist as an independent claim to relief; and in any event, is unenforceable to the extent that it is inconsistent and in conflict with the dissolution judgment; and the trial court erred in finding that any such agreement was valid and enforceable."
 3. "Regardless of collateral attack, and even assuming legal consideration, the Magistrate and Court erred by failing to find the agreement to be within the Statute of Frauds requiring reliance and part performance such as to make the `writing' of Defendant valid and enforceable."
 4. "The Magistrate and Court erred in considering any evidence of any issue as to fraud or an agreement arising prior to or subsequent to the dissolution judgment; such matters alleged prior to the final hearing are improper collateral attacks: [sic] and the facts arising subsequent to such judgment do not establish any separate enforceable agreement or extrinsic fraud warranting relief."
 5. "Since the evidence is insufficient to establish any legal consideration for the alleged agreement, and the trial court erred in finding that such an *Page 6 
agreement was valid and enforceable and said finding ignores any principles of equity."
 III. CIVIL RULE 60(B) {¶ 11} Under Civ.R. 60(B), the court may relieve a party from a final judgment because of
 "(1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(B); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (5) any other reason justifying relief from the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than one year after the judgment, order or proceeding was entered or taken."
Civ.R. 60(B); see, also, Matter of Yates, Hocking App. Nos. 05CA19 
05CA20, 2006-Ohio-2761, at ¶ 11 (quoting Civ.R. 60(B)).
 {¶ 12} To prevail on a Civ.R. 60(B) motion for relief from judgment, the movant must demonstrate: (1) a meritorious claim or defense; (2) entitlement to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) timeliness of the motion. Buckeye Fed. S. L.Assn. v. Guirlinger (1991), 62 Ohio St.3d 312, 314, 581 N.E.2d 1352. If the movant fails to establish any of these three requirements, the court must overrule the motion. Svoboda v. Brunswick (1983), 6 Ohio St.3d 348,351, 453 N.E.2d 648. The question of whether to grant relief is addressed to the sound discretion of the trial court, and we may reverse its determination only upon a showing of an abuse of that discretion.Rose Chevrolet, Inc. v. Adams (1988), 36 Ohio St.3d 17, 20-21,520 N.E.2d 564. Abuse of discretion implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219, *Page 7 450 N.E.2d 1140. When applying the abuse of discretion standard, a reviewing court is not free to substitute its judgment; rather, it must be guided by the presumption that the findings of the trial court are correct. Yates at ¶ 13, citing In re Jane Doe I (1991),57 Ohio St.3d 135, 566 N.E.2d 1181.
 IV. The Existence of a "Side Agreement" {¶ 13} In his first assignment of error, Hurst argues that the trial court's finding that the parties had a side agreement is against the manifest weight of the evidence. In particular, he references his own testimony that he never intended to give the property to Blevins, that he only made the promise to stop her harassment, and that he gave the writing to her only after the hearing. Furthermore, he notes the lack of clarity in Blevins's testimony regarding what debts the mortgage on the property secured; for instance, Blevins testified that the mortgage secured marital debts such as installing new siding on the house and other personal debt, but she also testified that she co-signed the loan after the dissolution of the marriage in order to allow Hurst to consolidate the marital debt that Hurst assumed as part of the settlement. In contrast, Hurst argues that "the mortgage on the marital property was secured to consolidate former marital debts. [Hurst] agreed to pay for all former marital debts in exchange for the home."
 {¶ 14} "`A contract is generally defined as a promise, or a set of promises, actionable upon breach. Essential elements of a contract include an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and of consideration.'" Kostelnik v.Helper, 96 Ohio St.3d 1, 2002-Ohio-2985, 770 N.E.2d 58, at ¶ 16, quotingPerlmuter *Page 8 Printing Co. v. Strome, Inc. (N.D. Ohio 1976), 436 F. Supp. 409, 414. The manifestation of assent by the offeree constitutes the acceptance.McSweeney v. Jackson (1996), 117 Ohio App.3d 623, 632, 691 N.E.2d 303, citing 2 Lord, Williston on Contracts (4 Ed. 1991) 8-9, Section 6:1. "[M]utual assent is normally manifested by offer and acceptance. An offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." Id. at 631-32, citingLeaseway Distrib. Centers, Inc. v. Ohio Dept. of Adm. Serv. (1988),49 Ohio App.3d 99, 105, 550 N.E.2d 955. This manifestation of assent may be made wholly or partly by written or spoken words or by other acts or by the failure to act. Id. at 631, citing Restatement of the Law 2d, Contracts (1981) 55, Section 19(1).
 {¶ 15} The existence of a contract raises a mixed question of fact and law. McSweeney, 117 Ohio App.3d at 631. We accept the facts found by the trial court on some competent, credible evidence, but review de novo the court's application of the law to the facts. Id. However, in determining whether a finding that a contract exists is against the manifest weight of the evidence, we are guided by a presumption that the findings of a trial court are correct because the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use their observations in weighing credibility of the proffered testimony. Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77,461 N.E.2d 1273; Soulsby v. Soulsby, Meigs App. No. 07CA1, 2008-Ohio-1019, at ¶ 31; McSweeney, 117 Ohio App.3d at 631.
 {¶ 16} Some competent, credible evidence supports the trial court's finding that a side agreement existed. Blevins testified that she was reluctant to agree to a *Page 9 
dissolution of the marriage on the terms provided in the settlement agreement. She also testified that Hurst and his paramour wanted to expedite the end of the marriage. Blevins testified that, in order to obtain her agreement to the dissolution, Hurst agreed to give her the house when the mortgage was paid off. Both Blevins and her daughter testified that Blevins had the signed promise before the final hearing. Hurst admits making the promise; thus, he admits that he manifested his assent to the contract, regardless of the fact that he never intended to be bound by it. "Secretly held, unexpressed intent is not relevant to whether a contract is formed. Courts may still find a `meeting of the minds' even if one party keeps a secret present intention to disregard his obligations under a newly formed contract." Nilavar v. Osborn
(1998), 127 Ohio App.3d 1, 12-13, 711 N.E.2d 726, citing 1 Williston, Contracts (4 Ed. 1990) 240-241, Section 4:1.
 {¶ 17} Although he argues that there was no consideration for the contract, the record supports the finding that there was a bargained for exchange of promises. Hurst promised to deed Blevins the property in 10 years and Blevins agreed to go forward with the dissolution of the marriage on the terms of the settlement agreement. Accordingly, some competent, credible evidence supports the trial court's decision. We overrule Hurst's first assignment of error.
 V. Fraud on the Court {¶ 18} In his second assignment of error, Hurst argues that the trial court erred in enforcing the side agreement because it merged into the judgment that dissolved the marriage or, alternatively, because the side agreement is inconsistent with that judgment. In his fourth assignment of error, Hurst argues that the trial court improperly *Page 10 
allowed a collateral attack on the judgment by considering evidence of events that occurred before the entry of the judgment. This argument is based largely upon a merger theory, and he relies on Hans v. Hans (Mar. 22, 1977), Franklin App. Nos. 76AP-853 76AP-900, 1997 WL 200013, in support of both arguments. Accordingly, we address these assignments of error together.
 {¶ 19} In Hans, the husband and wife had petitioned for a decree dissolving their marriage. The husband, however, decided to contest the divorce before the final hearing. Outside of the courtroom, the husband and wife agreed that the husband would receive certain marital property in exchange for not contesting the divorce. However, the separation agreement put before the court awarded this property to the wife, and the husband did not inform the trial court that the parties had reached a different agreement that was inconsistent with the separation agreement. Later, the husband sued for an order requiring the wife to deed him the property. The Tenth District held that the husband's action was an improper collateral attack on a final judgment and that the judgment had extinguished the side agreement. However, the court inHans did not consider whether the appellee was entitled to relief from judgment on grounds that the parties had committed a fraud on the court.
 {¶ 20} In a case decided after Hans, the Supreme Court of Ohio held that, "[p]ursuant to Civ.R. 60(B)(5), a court in appropriate circumstances may vacate a judgment vitiated by a fraud upon the court."Coulson v. Coulson (1983), 5 Ohio St.3d 12, 448 N.E.2d 809, paragraph one of the syllabus. The Supreme Court explained the type of fraud that would allow the trial court to vacate a judgment pursuant to Civ.R. 60(B)(5): *Page 11 
 "Fraud upon the court" is an elusive concept. "The distinction between `fraud' on the one hand and `fraud on the court' on the other is by no means clear, and most attempts to state it seem to us to be merely compilations of words that do not clarify." Toscano v. Commr. of Internal Revenue (C.A.9, 1971), 441 F.2d 930, 933.
 One commentator, however, had provided this definition: "`Fraud upon the court' should, we believe, embrace only that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by the officers of the court so that the judicial machinery can not perform in the usual manner its impartial task of adjudging cases that are presented for adjudication. Fraud, inter partes, without more, should not be a fraud upon the court, but redress should be left to a motion under 60(b)(3) or to the independent action." 7 Moore's Federal Practice (2 Ed. 1971) 515, Paragraph 60.33. See, also, Serzysko v. Chase Manhattan Bank (C.A.2, 1972), 461 F.2d 699; Kupferman v. Consolidated Research Mfg. Corp. (C.A.2, 1972), 459 F.2d 1072, 1078; Kenner v. Commr. of Internal Revenue (C.A.7, 1968), 387 F.2d 689, 691. Accord Hartford v. Hartford (1977), 53 Ohio App.2d 79, at pages 83-84, 371 N.E.2d 591.
 It is generally agreed that "* * * [a]ny fraud connected with the presentation of a case to a court is a fraud upon the court, in a broad sense." 11 Wright Miller, Federal Practice and Procedure (1973) 253, Section 2870. Thus, in the usual case, a party must resort to a motion under Civ.R. 60(B)(3). Where an officer of the court, e.g., an attorney, however, actively participates in defrauding the court, then the court may entertain a Civ.R. 60(B)(5) motion for relief from judgment. See Toscano, supra.
Id. at 15. The Supreme Court also concluded that "`"the trial court is best able to determine whether a fraud has been perpetrated upon it. Consequently, the trial court's determination of the issue is entitled to great weight * * *."'" Id. at 16, quoting the trial court andHartford v. Hartford (1977), 53 Ohio App.2d 79, 85, 371 N.E.2d 591, with approval; see, also, Velvet Ice Cream-Ringold, Inc. v. Hatfield (May 4, 1994), Ross App. No. 93CA1970, 1994 WL 171128 ("The trial court is in the best position to determine whether a fraud has been perpetrated upon it and such a finding will not be reversed absent an abuse of discretion."). *Page 12 
 {¶ 21} Hurst admitted that his previous attorney was aware of the side agreement and actively advised him to sign it. Hurst also admitted that the separation agreement represented to the trial court that there were no other agreements reached between the parties. Thus, the trial court could reasonably conclude that Hurst and his attorney misrepresented the fact that there were no other side agreements between the parties when, in fact, there was one. The record supports the conclusion that when it approved the settlement agreement, the trial court believed that document represented the actual agreement between the parties. The court clearly stated it would not have issued the dissolution decree if it had been fully informed of the side agreement. Thus, the trial court could reasonably conclude that Hurst and his previous attorney misled the court regarding a material fact and that this misrepresentation constituted a fraud on the court. We do not believe that the trial court unreasonably concluded that there had been "a fraud perpetrated by the officers of the court so that the judicial machinery [could] not perform in the usual manner its impartial task of adjudging cases that are presented for adjudication." Coulson, 5 Ohio St.3d at15. Because of this fraud, the trial court failed to incorporate the actual agreement of the parties into its divorce decree.
 {¶ 22} The trial court did not abuse its discretion in concluding that Blevins met the other elements required for relief from a judgment. We agree with the trial court that Civ.R. 60(B)(5) applies in this case. Hurst's attorney's fraud on the court gives Blevins a meritorious defense or claim. Hurst did not argue in the trial court or in his appellate brief that Blevins unreasonably delayed filing her motion. Because Hurst failed to raise this argument in the trial court or in his initial appellant brief, he has forfeited it for *Page 13 
purposes of appeal. Hallowell v. County of Athens, Athens App. No. 03CA29, 2004-Ohio-4257, at ¶¶ 19-20.
 {¶ 23} The evidence reflects that the actual agreement between the parties included the side agreement, that Hurst bargained for and received Blevins's assent to the dissolution of the marriage on terms that gave her ownership of the house, and that the trial court would not have approved the settlement agreement if it had know of the side agreement. Thus, we do not believe that the trial court abused its discretion in granting Blevins relief from judgment on the ground that a fraud on the court vitiated its judgment. Cf. Jelm v. Jelm (1951),155 Ohio St. 226, 98 N.E.2d 401, paragraph two of the syllabus ("The Common Pleas Court, as a court of general jurisdiction, has inherent power to vacate a judgment of divorce rendered by it at a previous term of court when such judgment of divorce was procured by means practiced by the successful party such as to constitute a fraud upon the court.");Harless v. Lambert, Meigs App. No. 06CA6, 2007-Ohio-2207, at ¶ 13 (recognizing the trial court's "inherent powers to remedy a fraud"). Accordingly, we overrule Hurst's second and fourth assignments of error.
 VI. Statute of Frauds {¶ 24} In his third assignment of error, Hurst argues that the Statute of Frauds renders the side agreement unenforceable. Although he does not spell the argument out specifically, he contends that the side agreement does not constitute a memorandum sufficient to satisfy the Statute of Frauds and that the part performance and promissory estoppel exceptions to the Statute of Frauds do not apply. Blevins argues that Hurst failed to raise this argument below. However, Hurst argued in his *Page 14 
Objections to the Magistrate's Decision that the side agreement was unenforceable and that the part performance doctrine did not apply. We believe that Hurst sufficiently apprised the trial court of his Statute of Frauds argument.
 {¶ 25} The Statute of Frauds provides that "`no action shall be brought' regarding an `interest in or concerning' land unless the agreement upon which the action is based is in writing and signed by the defendant." Ed Schory Sons, Inc. v. Soc. Natl. Bank,75 Ohio St.3d 433, 438-39, 1996-Ohio-194, 662 N.E.2d 1074, quoting R.C. 1335.05. "`In the realm of real estate transactions, a memorandum of an oral agreement satisfies the Statute of Frauds if it (1) identifies the subject matter of the transaction, (2) establishes that a contract has been reached, and (3) states the essential terms of the agreement. * * * If the writing does not contain words which can reasonably be construed as words of promise or agreement, the writing is not a memorandum for purposes of the Statute of Frauds.'" Stickney v. Tullis-Vermillion,165 Ohio App.3d 480, 2006-Ohio-842, 847 N.E.2d 29, at ¶ 24, quoting Lacy v.Adair (Nov. 22, 1989), Greene App. No. 89 CA 0018, 1989 WL 150809
(alteration in original).
 {¶ 26} We do not believe that the Statute of Frauds bars the trial court from giving Blevins relief from judgment. A court may enforce a separation agreement that was signed for purposes of dissolving a marriage if a court has incorporated that agreement into the dissolution decree, even if that settlement agreement is partially or wholly oral. See Pawlowski v. Pawlowski (1992), 83 Ohio App.3d 794, 798-99,615 N.E.2d 1071 ("The question presented is whether the parties to a divorce action can enter into and be bound by an oral separation agreement. * * * [A]n oral agreement is possible and can be enforced by the court in those circumstances where the terms of *Page 15 
the agreement can be established by clear and convincing evidence."); see, also, Kostelnik v. Helper, 96 Ohio St.3d 1, 2002-Ohio-2985,770 N.E.2d 58, at ¶ 15 ("It is preferable that a settlement be memorialized in writing. * * * [A]n oral settlement agreement may be enforceable if there is sufficient particularity to form a binding contract." (citingPawlowsi)).
 {¶ 27} However, in reality, the trial court is not enforcing the separation agreement or the separate side agreement, but instead is enforcing its dissolution decree that incorporates the agreement of the parties. "Where an agreement of the parties is incorporated in the decree of a court in a divorce case, such agreement is superseded by the decree, and the obligations imposed by such agreement are thereafter imposed by decree and may be enforced as such." Robrock v. Robrock
(1958), 167 Ohio St. 479, 150 N.E.2d 421, at paragraph three of the syllabus, overruled on other grounds by Nokes v. Nokes (1976)47 Ohio St.2d 1, 7-8, 351 N.E.2d 174 (per curium). Accordingly, the issue is not the enforceability of the side agreement on its own terms, but the power of the trial court to modify or vacate its prior judgment under Civ.R. 60(B)(5).
 {¶ 28} As we explained above, there is competent, credible evidence of a side agreement that modified the separation agreement. The trial court could have incorporated that side agreement into its dissolution decree, which then would have been enforceable notwithstanding the fact that doing so transferred title to real property. However, because of the fraud on the court, the trial court failed to incorporate the actual agreement of the parties into its initial dissolution decree. Ultimately, the trial court had discretion to vacate or modify its dissolution decree under Civ.R. 60(B)(5) *Page 16 
because of the fraud on the court. Coulson, supra, at paragraph one of the syllabus. Therefore, the Statute of Frauds does not bar the trial court from granting Blevins relief from judgment enforcing that relief. We overrule Hurst's third assignment of error.
 VII. Principles of Equity {¶ 29} Finally, in his fifth assignment of error, Hurst argues that "[g]ranting [Blevins] the marital home free and clear of debt after ten (10) years of payments by [Hurst] ignores the principles of equity." Hurst puts forward no authority for this position. Furthermore, the trial court could reasonably conclude that the balance of equities weighed in Blevins's favor. "It is fundamental that he who seeks equity must do equity, and that he must come into Court with clean hands."Christman v. Christman (1960), 171 Ohio St. 152, 154, 168 N.E.2d 153. The evidence supports a finding that Hurst deceived Blevins into agreeing to the dissolution of the marriage by inducing her assent with a promise Hurst did not intend to fulfill. The evidence also supports a finding that Hurst took advantage of the fact that Blevins was not represented by counsel. Finally, the evidence supports a finding that Hurst deceived the court by not mentioning the existence of the side agreement because he and his attorney were aware that the court would have required the side agreement be a part of the dissolution decree. Thus, the trial court could reasonably conclude that Hurst lacked the "clean hands" necessary to seek shelter in the court's power to do equity.
 {¶ 30} Moreover, the evidence supports the trial court's conclusion that the payments made on the house by Hurst were not a benefit conferred upon Blevins but instead represented only Hurst's payment of his share of the marital debt. The trial court discredited Hurst's testimony that the mortgage represented money taken out to *Page 17 
pay for the house. Blevins testified that she allowed Hurst to use the house as collateral to secure his share of the marital debt. Although we recognize the lack of clarity and apparent inconsistencies in Blevins's testimony, we cannot say that the trial court erred in crediting her testimony and in concluding that Hurst had not, in effect, paid for the house. Instead, the house represented security for Hurst's share of the debt.
 {¶ 31} For these reasons, we overrule his fifth assignment of error. Having found no reversible error, we affirm the judgment below.
 JUDGMENT AFFIRMED. *Page 18