[Cite as *Army v. Dunlap*, 2017-Ohio-9084.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## VAN WERT COUNTY

KEDAR ARMY, ET AL.,

    PLAINTIFFS-APPELLANTS,         CASE NO. 15-17-08

    v.

RACHELLE DUNLAP,                O P I N I O N

    DEFENDANT-APPELLEE.

Appeal from Van Wert County Municipal Court
Trial Court No. CVG 1500426

Judgment Affirmed

Date of Decision: December 18, 2017

APPEARANCES:

    *Timothy C. Holtsberry* for Appellants

    *Collette J. Carcione* for Appellee

**SHAW, J.**

{¶1} Plaintiffs-counterclaim defendants-appellants, Kedar Army and Mary Lou Army (collectively, "appellants"), bring this appeal from the June 20, 2017, judgment of the Van Wert Municipal Court awarding judgment in favor of defendant-counterclaim plaintiff-appellee, Rochelle Dunlap ("Dunlap"). On appeal, appellants contend that the trial court erred by finding an oral "lease-purchase agreement" for a mobile home invalid and contrary to law.

*Relevant Facts and Procedural History*

{¶2} In early August of 2014, Dunlap and her son Schuyler were looking for a mobile home to rent or purchase as soon as possible as they were moving out of Findlay and moving to Van Wert so Schuyler could attend school that fall. Dunlap contacted appellants, who ran a mobile home park called Briarwood Trailer Park in Van Wert. Dunlap asked about the possibility of renting or purchasing a mobile home for her son and their three dogs. Dunlap indicated that $10,000 was the most she could spend on a mobile home.

{¶3} Appellants indicated to Dunlap that they had nothing available to rent, but they contacted Dunlap a couple of days later stating that they had at least two mobile homes available that Dunlap could potentially purchase. Dunlap was shown one mobile home that appellants told her and Schuyler was a 1990 model mobile home. Dunlap had previously lived in a 1991 mobile home that she had paid

$18,500 for, which had a dishwasher and other amenities, so when appellants indicated the purchase price for the 1990 model would be $16,900, Dunlap thought it was fair.

{¶4} Dunlap then entered into an oral agreement with appellants to purchase the 1990 mobile home for $16,900, with a $10,000 down payment. Dunlap did not have the mobile home inspected or appraised. Dunlap and appellants agreed that Dunlap would pay the remaining balance of $6,900 in 43 monthly installments of $190.[1]

{¶5} Dunlap was also responsible for a $290 monthly lot fee to appellants for the lot where the mobile home was placed. Dunlap and appellants signed a written lease agreement for the lot *and* a separate agreement for the "lease" of the 1990 mobile home to reflect the monthly payments toward purchase, though no written contract for the purchase of the mobile home was ever signed by Dunlap. Appellants eventually produced a purported written "sales agreement" that supposedly reflected the parties' agreement, but the sales agreement was not signed by Dunlap and Dunlap indicated she had never seen it prior to this litigation.

{¶6} Dunlap moved into the mobile home at 134 Briarwood in August of 2014. She paid her monthly installments and her lot fee through December of 2014. She paid nothing further from that point on.

---

[1] This amount allowed for an interest rate that is illegible on the purported sales agreement.

{¶7} In April of 2015, Dunlap listed the mobile home for sale and she was contacted by a potential purchaser who informed her that the mobile home she was living in could not be newer than a 1975 model because the model Dunlap had was no longer made after that year.[2] Dunlap looked into the matter and found out a model such as hers in "good" condition was only worth approximately $2,000.

{¶8} Dunlap then attempted to speak with appellants, to get a copy of the title from appellants, and to negotiate with appellants about the return of her money, less any money she owed for rent, but she was unsuccessful in obtaining the title or negotiating an agreement with the appellants. Appellants also informed Dunlap that she could not sell the mobile home because she did not have the title to it.

{¶9} On June 19, 2015, appellants filed a "Complaint in Forcible Entry and Detainer" against Dunlap. The complaint alleged that Dunlap entered into possession of a lot and trailer under two written contracts on a month-to-month tenancy, that she had failed to pay rent as agreed, and that she owed $2,880.00 plus any damages that may have been incurred.

{¶10} On July 17, 2015, Dunlap filed an answer denying that she owed appellants money. Dunlap also filed a counterclaim alleging that appellants were

---

[2] In their reply brief to this court, appellants argue that testimony regarding the year of the mobile home was stricken as hearsay. One statement was stricken as hearsay later on in the hearing; however, the vast majority of the discussion regarding the year of the mobile home was not objected to and was not stricken. There was testimony from Dunlap that she learned that the mobile home was a 1975 model and that she researched the value of her model after learning it was not a 1990. Thus appellants' assertions in their reply brief that this evidence was not properly before the trial court are unfounded.

wrongfully withholding her $10,000 "down payment/earnest money deposit." Dunlap argued that a lease-purchase agreement for a mobile home was contrary to statute, that it was unlawful, and that appellants' failure to return her $10,000 would result in unjust enrichment of the appellants.

{¶11} In August of 2015, Dunlap vacated the mobile home and transferred possession of the keys. She had the mobile home professionally cleaned before she left. Kedar Army's son Nicholas went into the home after it had been cleaned and indicated that the condition of the mobile home was poor, that there were dog feces in certain areas of the carpet and that there was water damage in various spots.

{¶12} On December 9, 2015, Dunlap filed an amended answer and counterclaim, with leave of court, adding that since she had relinquished possession of the mobile home appellants were wrongfully withholding her $10,000 as a security deposit contrary to R.C. 5321.16. Dunlap noted that appellants had returned $2,000 of the $10,000 deposit to her, but they had not provided her with an itemized list of damages. Dunlap requested the return of $8,000 to her, plus interest, along with attorney's fees.

{¶13} On January 20, 2016, the matter proceeded to a bench trial. Appellants first called Dunlap, as on cross-examination, who admitted that there had been an *oral* agreement for her to purchase a 1990 mobile home and that she had paid $10,000 as a down payment.

{¶14} Kedar's son, Nicholas Army, was the next witness to testify on behalf of appellants. Nicholas testified that he worked on the mobile home after Dunlap moved out. He testified that in his opinion the mobile home needed significant repairs and cleaning. He also testified to staining on the carpets and pet odors.

{¶15} Kedar Army then testified on his own behalf. He testified that that he and Dunlap had entered into a rent-to-own agreement for the mobile home. He testified that if he was simply renting the mobile home, without the down payment, the rent, including the lot, would be approximately $640. In addition, Kedar testified that prior to Dunlap's occupation of the mobile home, it had been unoccupied since 2009, when it was renovated.

{¶16} Kedar testified that he had received no rent from Dunlap from January of 2015 to August of 2015, and that he had damages that would cost him in excess of $4,000 to repair.

{¶17} In Dunlap's case-in-chief, she testified that when she initially approached appellants they said that they did not do rentals. She testified that she thought the appellants were trustworthy, and that she needed a place quickly, so she elected to purchase a mobile home from them.

{¶18} Dunlap testified that she eventually learned that the tax value of the mobile home was roughly $540, and that the value of it in good condition was approximately $2,000. Dunlap produced exhibits indicating that appellants had

purchased the mobile home in 2007 for $250 and that it had a tax value of $540. Dunlap testified that when she attempted to sell the mobile home appellants told her that she could not. Dunlap also testified to various repairs that appellants were unwilling to make while she lived in the mobile home.

{¶19} Dunlap testified that she hired professional cleaners to clean the mobile home before she left, and that there were stains and spots on the carpet when she moved in. Dunlap testified that Kedar Army had told her the stains were from prior tenants and their children and animals. Dunlap did testify that appellants had returned $2,000 to her.

{¶20} Tonya Phillips of Bucket Brigade, a cleaning company, testified at the hearing that she cleaned the mobile home after Dunlap moved out. She testified that she did not notice any odors or any dog feces stains as alleged by appellants.

{¶21} Schuyler Dunlap also testified at trial that Kedar had represented to them that the mobile home was a 1990 model before Dunlap agreed to purchase it. Schuyler's girlfriend testified at trial that there were stains on the carpet when the Dunlaps moved in. At the conclusion of the testimony, the matter was submitted to the trial court for decision.

{¶22} On June 20, 2017, the trial court filed its judgment entry on the matter.[3] The trial court summarized the litigation, all the testimony that was presented at the

---

[3] There is no indication in the record as to why it took the trial court 18 months to rule in this case.

final hearing, the pertinent exhibits introduced, and the arguments of the parties.

The trial court ultimately determined as follows with regard to the purported sales

agreement.

> **The Plaintiff in this case has preyed upon this Defendant. His conduct is reprehensible. The Court[']s review of the Defendant[']s Mobile Home leases (Exhibit A, B) show a landlord who is using leases dated from 1977. Leases which are in violation of most every Ohio Landlord Tenant law. Contrary to the Plaintiffs' beliefs, residents of Mobile Homes have rights and there are laws which were created to mandate that park operators make repairs and do what is necessary to maintain the premises they rent in a fit and habitable condition.**
>
> **In conclusion, this court finds that the Sales Agreement drafted by the Plaintiff attempting to impose on the Defendant a purchase of a 1975 Mobile home is contrary to law and is void.**

(Doc. No. 16).

**{¶23}** As to the appellants' claims for damages, the trial court essentially

indicated that Kedar Army's testimony was not credible, particularly regarding any

purported damage that Dunlap had done to the mobile home. The trial court thus

found that appellants had not established any damages.

**{¶24}** Addressing the appellants' claims for rent, the trial court found that

appellants were entitled to lot rent totaling $1,740.00, but their recovery was limited

to the lot rent because the trial court determined that the purported sales/ "lease-

purchase" agreement was "void." The trial court reasoned that a lease with an

option to purchase a mobile home was improper under the trial court's interpretation

of R.C. 1351.01, and that a mobile home could not be the subject of a lease-purchase agreement. The trial court thus treated the $10,000 "down payment" amount as a deposit that appellants were wrongfully withholding.

{¶25} On the basis of its analysis the trial court awarded Dunlap the remaining $8,000 from her deposit, plus interest, less $1,740.00 that Dunlap owed for lot rent. Dunlap was also awarded attorney's fees which the trial court indicated were statutory for the return of a deposit.

{¶26} It is from the trial court's judgment that appellants bring this appeal, asserting the following assignments of error for our review.

**Assignment of Error No. 1**
**The trial court erred in not addressing the sales agreement as a part of the parties['] contractual agreements.**

**Assignment of Error No. 2**
**The trial court erred in voiding the lease for the mobile home based upon R.C. Chapter 1351.**

{¶27} We elect to address the assignments of error together.

*First and Second Assignments of Error*

{¶28} In appellants' first assignment of error, they argue that the trial court erred by finding that the sales agreement between the parties was "void." Specifically, appellants contend that the parties had orally agreed regarding the purchase of the mobile home and that part performance should apply in this instance in the absence of an actual written agreement signed by Dunlap. In appellants'

-9-

second assignment of error, they argue that even if the trial court did not err by invalidating the oral sales agreement, the trial court erred by voiding the separate written lease agreement.

{¶29} In order to address the appellants' arguments, we must first place them in their proper context. Appellants are attempting to enforce an oral "lease-purchase" agreement of a mobile home. While the appellants characterize their agreement as a lease-purchase agreement, they really seem to be attempting to enforce something akin to a "land installment contract." However, a land installment contract pursuant to R.C. 5313.01 would not include a mobile home as it is not real property. *Shepard's Mobile Home Park, Ltd. V. Sigmon*, 5th Dist. Licking No. 14-CA-61, 2014-Ohio-4367, ¶ 12. Thus to any extent appellants are attempting to enforce this oral agreement as a land installment contract, it is invalid as the trial court found.

{¶30} There is a separate provision of the revised code that defines "lease-purchase agreements" of *personal* property, R.C. 1351.01(F). However, that provision of the revised code specifically excludes motor vehicles from lease-purchase agreements, which pursuant to the definition of motor vehicle in R.C. 4501.01 would include a mobile home.

{¶31} Based on this exclusion of motor vehicles in R.C. 1351.01(F) from lease-purchase agreements, the trial court found that the purported lease-purchase

agreement of a mobile home in this case was contrary to statute and therefore void. The trial court cited a similar finding from a common pleas court that determined a "lease with option to purchase [a] mobile home [is] contrary to law and cannot be enforced." *Skyland Hills Corp. v. Clendenin*, Stark Co. No. 04CVF7995 2005WL3782949.

{¶32} The lack of statutory authority for a lease-purchase agreement of a mobile home would seem to support the trial court's ruling. This is particularly true given that because the oral sales agreement of the mobile home called for 43 monthly payments it would be governed by the statute of frauds as it could not be discharged within a year. *See* R.C. 1335.05; *Sherman v. Haines*, 73 Ohio St.3d 125, 1995-Ohio-222 ("An alleged oral agreement to pay money in installments is 'an agreement that is not to be performed within one year' pursuant to R.C. 1335.05 when the installment payment obligation exceeds one year."). A lack of a signed written document would preclude recovery on a contract, unless the court elected to employ an equitable remedy.

{¶33} Appellants *were* seeking an equitable remedy from the trial court, as they admittedly did not have a written contract for their purported lease-purchase agreement of the mobile home signed by Dunlap. Nevertheless, appellants contend that because Dunlap partly performed on the oral contract, the statute of frauds should be inapplicable here.

**{¶34}** In an action for specific performance, part performance is an equitable doctrine that renders the Statute of Frauds inoperative. *Bumgarner v. Bumgarner*, 4th Dist. Highland No. 09CA22, 2010-Ohio-1894, ¶ 26, citing *Jones v. Bonzo*, 4th Dist. Lawrence No. 1977, 1991WL224159. However, "the party seeking to invoke the equitable powers of the court must himself be free from 'reprehensible conduct' concerning the subject matter of the lawsuit." *Id*. ¶ 32, citing *Goldberger v. Bexley Properties*, 5 Ohio St.3d 82, 85 (1983). This is known as the "clean hands doctrine," where " 'he who seeks equity must do equity.' " *Id.* quoting *Hurst v. Hurst*, 4th Dist. Ross No. 07CA2980, 2008-Ohio-3462, ¶ 29.

**{¶35}** "[T]he ultimate decision to apply equitable doctrines is generally left to the discretion of the trial court and we review it under the abuse of discretion standard." *Bumgarner* at ¶26, citing *Home Natl. Bank v. Buckallew,* Meigs Nos. 06CA2, 06CA3, 2007–Ohio1339, at ¶ 34. "The term 'abuse of discretion' connotes more than an error of * * * judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

**{¶36}** In this case, aside from finding that the oral contract was void, the trial court essentially found that appellants lacked "clean hands" to provide them with an equitable remedy. The trial court found that appellants had "preyed upon" Dunlap and that their conduct in this matter was "reprehensible."

{¶37} The trial court's findings are supported by the testimony from Dunlap and her son that appellants misrepresented the year of the mobile home and the appellants' attempt to have Dunlap be held liable for damages and stains in the mobile home that were already present when she moved in. The trial court also noted that appellants were using standardized lease forms that were badly outdated and contained clauses that were contrary to the current law or would violate appellants' duty to maintain habitable premises.

{¶38} Based on the trial court's findings and the evidence presented, we cannot find that the trial court abused its discretion by declining to employ its equitable powers in this instance to enforce an oral sales agreement. For all of these reasons appellants' first assignment of error is overruled.

{¶39} Appellants next argue that even if the lease-purchase agreement was invalid, they still had a valid written lease agreement for the subject mobile home. Contrary to appellants' arguments, there was never truly a "meeting of the minds" or an "agreement" for a "lease" of the mobile home. Both parties orally agreed that Dunlap would *purchase* a 1990 mobile home and that she would make 43 monthly payments to pay off that *purchase*. The written lease, and the amount of the monthly payment, seemed to serve only to memorialize those monthly payments for the purported purchase. Thus we cannot find that the trial court erred in finding that the written lease was unenforceable, particularly given the actions of appellants in this

case and the trial court's credibility determinations regarding appellants' conduct. Therefore, appellants' second assignment of error is overruled.

*Conclusion*

{¶40} For the foregoing reasons, appellants' assignments of error are overruled and the judgment of the Van Wert Municipal Court is affirmed.

***Judgment Affirmed***

**PRESTON, P.J. and WILLAMOWSKI, J., concur.**

**/jlr**