McSWEENEY, Appellee,

v.

JACKSON et al., Appellants.

[Cite as *McSweeney v. Jackson* (1996), 117 Ohio App.3d 623.]

Court of Appeals of Ohio,
Fourth District, Lawrence County.

No. 96CA1.

Decided Dec. 30, 1996.

---

624

626

*John Wolfe,* for appellee.

*Marty J. Stillpass,* for appellants.

---

HARSHA, Judge.

Mark and Cathy Jackson appeal from a judgment by the Lawrence County Court of Common Pleas which ordered specific performance of an oral agreement to sell real estate to appellee. Appellants raise the following assignments of error for our review:

I. "The court below erred in finding that the defendant-appellants had waived the affirmative defense of the statute of frauds when a motion to amend the pleadings was made at the close of the plaintiff-appellee's case, where the plaintiff-appellee's complaint alleges an oral agreement, and where the plaintiff-appellee claimed no surprise or prejudice by the allowance of the amendment."

II. "The court below erred in finding that defendant-appellant, Mark Jackson, was the agent for defendant-appellant, Cathy Jackson, with respect to the sale of the subject real estate."

III. "The court below erred in holding that a contract for the purchase of the real estate existed between the plaintiff-appellee, Larry McSweeney, and the defendant-appellants, Mark and Cathy Jackson."

Mark and Cathy Jackson placed an advertisement in the newspaper on June 8, 1995, to sell five parcels of land for $24,000. On June 11, 1995, Larry McSweeney met with Mark Jackson to view the property. McSweeney told Mr. Jackson that he would call him that evening if he was interested in the property. McSweeney never called. The next day, when Mr. Jackson was showing the property to Phillip and Kathy Kincaid, McSweeney showed up on the property. The parties are in dispute as to what happened after McSweeney arrived on the property. Allegedly, McSweeney motioned for Mr. Jackson to come over to his car where he proceeded to give Mr. Jackson a check for $4,000. Mr. Jackson testified that he told McSweeney that he could not accept the check because McSweeney had not called him and he was showing the property to the Kincaids. Mr. Jackson then stated that McSweeney folded the check and put it into Jackson's shirt pocket as he was huddled over McSweeney's car. McSweeney testified that he told Mr. Jackson that he wanted to purchase the property and he gave Mr. Jackson the $4,000 check as a down payment. McSweeney also testified that Mr. Jackson gave him the deed book numbers when he said he wanted to buy the property and told him that the balance would either have to be in cash or a cashier's check. McSweeney then left the property and returned fifteen minutes later with a friend, James Earl. Earl testified that at that time, Mr. Jackson

wanted to know if McSweeney had already resold the property and said, "I want you to take this check back. I want the purchase price all in one check." Earl then testified that McSweeney replied, "Well, that gives me a problem because I've already ordered the Cashier's Check for the balance as you told me to." McSweeney and Earl then allegedly viewed the property and were again confronted by Mr. Jackson as they were leaving. McSweeney and Earl both testified that Mr. Jackson approached them and told McSweeney that he was backing out of the deal because the Kincaids had offered him more money for the property. However, the Kincaids testified that they had never made a deal with Mr. Jackson because they did not want to purchase all five lots. Mr. Jackson testified that he approached McSweeney and told him that they did not have a deal, he did not intend to sell the property to him, and he returned the $4,000 check to him.

McSweeney filed suit against the Jacksons, seeking specific performance of their oral agreement to sell the five lots of real estate. The Jacksons filed a general denial of the claims, but failed to specifically allege the affirmative defense of the statute of frauds. At trial, the Jacksons raised the statute of frauds defense in their opening statement, but McSweeney objected on the grounds of waiver. At the close of McSweeney's case, the Jacksons moved to amend the pleadings to include the affirmative defense. Again, McSweeney objected.

The magistrate held that the case was removed from the statute of frauds by partial performance when McSweeney delivered the $4,000 check as down payment on the property. The magistrate recommended specific performance of the oral contract. The Jacksons filed objections to the magistrate's report, alleging that part performance did not remove the case from the statute of frauds, that there was no evidence of a contract with Cathy Jackson, and that the essential elements of a contract were neither pled nor proven. The trial court conducted its own independent review of the magistrate's decision and disregarded it because the magistrate stated "it seems reasonable to infer," rather than finding that an inference was made based upon the evidence. The trial court also rejected the magistrate's finding that the case was removed from the statute of frauds by partial performance. However, upon its own independent review and hearing, the trial court determined that the Jacksons waived the statute of frauds defense, that Mark Jackson was the duly authorized agent of Cathy Jackson with respect to the sale of the real estate, and that the parties had entered into an oral agreement for the sale of the real estate. The Jacksons filed a timely notice of appeal.

In their first assignment of error, appellants argue that appellee's complaint is barred by the statute of frauds and that they should have been

permitted to amend the pleadings to include the statute of frauds as an affirmative defense. Generally, the failure to plead the statute of frauds as an affirmative defense constitutes a waiver of that defense. *Houser v. Ohio Historical Soc.* (1980), 62 Ohio St.2d 77, 79, 16 O.O.3d 67, 68, 403 N.E.2d 965, 966–967; *Ford v. Tandy Transp., Inc.* (1993), 86 Ohio App.3d 364, 381, 620 N.E.2d 996, 1006–1007; Civ.R. 8(C).[1] In this case, appellants failed to raise this affirmative defense in their answer or in any pretrial motions. Appellants presented this defense for the first time during opening statements at trial. This constitutes a waiver of the statute of frauds as an affirmative defense. *ABC Supply Co. v. Acevedo* (Nov. 22, 1995), Cuyahoga App. No. 68634, unreported, 1995 WL 693121.

Appellants argue that the defense was not waived because they attempted to amend the pleadings to include the statute of frauds as a defense. A party may appropriately raise an affirmative defense in an amended pleading. *Hoover v. Sumlin* (1984), 12 Ohio St.3d 1, 6, 12 OBR 1, 5–6, 465 N.E.2d 377, 381–382. Civ.R. 15(A) states that after the time has expired for amending a pleading as a matter of course, a party may amend his pleading only by leave of court or written consent of the adverse party. Furthermore, Civ.R. 15(B) allows a party to amend the pleadings to conform to the evidence presented at trial.[2] While leave of court shall be freely given, it is a matter that is within the sound discretion of the trial court. *Mossa v. W. Credit Union, Inc.* (1992), 84 Ohio App.3d 177, 181, 616 N.E.2d 571, 574–575; Civ.R. 15(A). Accordingly, a reviewing court will not reverse a trial court's ruling absent an "abuse of discretion." The term "abuse of discretion" implies that the court's ruling was "unreasonable, arbitrary, or unconscionable." *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 173, 404 N.E.2d 144, 149. Therefore, to find an abuse of discretion, we must find that the trial court committed more than an error of judgment. When applying the abuse of discretion standard, a reviewing court is not free

---

1. Civ.R. 8(C) deals with affirmative defenses and provides:

   "In pleading to a preceding pleading, a party shall set forth affirmatively * * * statute of frauds, * * * and any other matter constituting an avoidance or affirmative defense."

2. Civ.R. 15(B) states:

   "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment. Failure to amend as provided herein does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence."

merely to substitute its judgment for that of the trial court. *In re Jane Doe 1* (1991), 57 Ohio St.3d 135, 566 N.E.2d 1181, citing *Berk v. Matthews* (1990), 53 Ohio St.3d 161, 559 N.E.2d 1301.

Appellants cite *Hoover, supra,* in which the court stated that "[a]lthough the grant or denial of such leave is within the sound discretion of the trial court, where the defense is tendered timely and in good faith, and no reason is apparent or disclosed for denying leave, the denial of leave to file such an amended pleading or the subsequent striking of a defense from an amended pleading is an abuse of discretion." *Hoover, supra,* citing *Peterson v. Teodosio* (1973), 34 Ohio St.2d 161, 175, 63 O.O.2d 262, 269–270, 297 N.E.2d 113, 122. In this case, however, we cannot say that the trial court acted unreasonably or arbitrarily in its decision to deny leave to amend. Appellants did not move to amend the pleadings until after the close of appellee's case. The issue was not tried with the express or implied consent of appellee. Appellee objected when appellants raised the defense in opening statements and when they asked the court for leave to amend. Under these circumstances, we conclude that the trial court did not abuse its discretion in denying appellants leave to amend the pleadings. Thus, the trial court was correct in finding that appellants waived the statute of frauds as an affirmative defense. Accordingly, appellants' first assignment of error is overruled.

Appellants allege in their second assignment of error that the trial court erred in finding that Mark Jackson was Cathy Jackson's agent for the sale of the real estate. An agency relationship is not presumed between husband and wife simply based upon their marital relationship. *Sowers v. Birkhead* (1958), 108 Ohio App. 507, 512, 9 O.O.2d 491, 494, 157 N.E.2d 459, 462–463; *Borsick v. State Farm Fire & Cas. Ins. Co.* (Mar. 31, 1993), Erie App. No. E–92–26, unreported, 1993 WL 93521. However, an agency relationship may be created either by an express grant of authority, by implication, or by agency by estoppel. *Id.; Texas–Tennessee Internatl., Inc. v. Marshall C. Rardin & Sons, Inc.* (Aug. 20, 1986), Summit App. No. 12431, unreported, 1986 WL 9133. Here, the trial court determined that Mark Jackson was the duly authorized agent of Kathy Jackson for the sale of the real estate. However, the trial court did not clearly indicate under which theoretical basis the relationship was created.

On the record, the trial court's decision could be grounded on agency by estoppel. "Agency by estoppel will be established only where the principal holds the agent out as possessing authority to act on the principal's behalf, or the principal knowingly permits the agent to act as though he had such authority." *Borsick, supra.* See, also, *Blackwell v. Internatl. Union, U.A.W.* (1983), 9 Ohio App.3d 179, 9 OBR 289, 458 N.E.2d 1272. Cathy Jackson testified that she

consented to selling the five lots in question for a price of $24,000. She also testified that the identity of the buyer was unimportant, as long as they received their money. Further, Cathy Jackson consented to her husband showing the property on their behalf and conducting the negotiations. Thus, she knowingly permitted her husband to conduct the sale of their property as though he had full authority.

While there is conflicting evidence in this case, the existence of an agency relationship is a question of fact. *Western Specialty Co. v. N. Royalton Beverage Ctr.* (Apr. 21, 1977), Cuyahoga App. No. 35806, unreported. Thus, we will not overrule reasonable conclusions by the trier of fact simply because we might not have reached the same result. *Id.* Accordingly, we determine that the trial court's decision was supported by the record and that it was reasonable to conclude that an agency relationship existed between Mark and Cathy Jackson. Appellants' second assignment of error is without merit.

Appellants' third assignment of error argues that the trial court erred by holding that a contract existed for the purchase of real estate. A contract is a promise or a set of promises for the breach of which the law gives a remedy, or the performance of which the law in some way recognizes a duty. Restatement of the Law 2d, Contracts (1981) 5, Section 1. In other words, an express contract connotes an exchange of promises where the parties have communicated in some manner the terms to which they agree to be bound. *Cuyahoga Cty. Hospitals v. Price* (1989), 64 Ohio App.3d 410, 415, 581 N.E.2d 1125, 1127–1128. In order to declare the existence of a contract, the parties to the contract must consent to its terms, there must be a meeting of the minds of both parties, and the contract must be definite and certain. *Episcopal Retirement Homes, Inc. v. Ohio Dept. of Indus. Relations* (1991), 61 Ohio St.3d 366, 369, 575 N.E.2d 134, 136–137; see, also, *Alligood v. Procter & Gamble Co.* (1991), 72 Ohio App.3d 309, 594 N.E.2d 668.

Manifestation of mutual assent to an exchange requires that each party either make a promise or begin or render a performance. Restatement of the Law 2d, Contracts (1981) 53, Section 18. The manifestation of assent may be made wholly or partly by written or spoken words or by other acts or by the failure to act. *Id.* at 55, Section 19(1); see, also, *Terex Corp. v. Grim Welding Co.* (1989), 58 Ohio App.3d 80, 82, 568 N.E.2d 739, 741 (the term "contract" includes every description of agreement or obligation, *whether verbal or written,* whereby one party becomes bound to another to pay a sum of money or to perform or omit to do a certain act). The mutual assent is normally manifested by offer and acceptance. An offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent

to that bargain is invited and will conclude it. *Leaseway Distrib. Centers, Inc. v. Ohio Dept. of Adm. Serv.* (1988), 49 Ohio App.3d 99, 105, 550 N.E.2d 955, 961–962. The manifestation of assent by the offeree constitutes the acceptance. 2 Lord, Williston on Contracts (4 Ed.1991) 8–9, Section 6:1.

Upon appellate review, the existence of a contract raises a mixed question of fact and law. We accept the facts found by the trial court on some competent, credible evidence, but freely review application of the law to the facts. A reviewing court should be guided by a presumption that the findings of a trial court are correct, since the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use their observations in weighing credibility of the proffered testimony. *In re Jane Doe I, supra.* See, also, *Seasons Coal.Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 10 OBR 408, 461 N.E.2d 1273.

In its decision, the trial court determined that the preponderance of the evidence established the existence of an oral agreement between the parties for the sale of the real estate in question. The court found the testimony of appellee and James Earl persuasive in this matter. After complete review of the record, we conclude that there was competent, credible evidence to support a finding that the parties manifested an intent to enter into an agreement. Appellants placed an advertisement in the newspaper indicating their intention to sell the five lots of real estate. Appellants also included a specific price term in the advertisement, thus making an offer to sell. Evidence was presented of appellee's acceptance of that offer by delivering a $4,000 check as down payment on the property. Further, there was testimony that the parties agreed on paying the rest of the purchase price by cashier's check the following day. Accordingly, the terms of the contract were established through the advertisement and negotiations, and the parties showed a manifestation of mutual assent as to those terms. As a matter of law, the agreement formed between the parties encompasses the essential elements of the bargain, making it an enforceable agreement. See *Mr. Mark Corp. v. Rush, Inc.* (1983), 11 Ohio App.3d 167, 169, 11 OBR 259, 261–262, 464 N.E.2d 586, 589–590. Appellants' third assignment of error is overruled and the judgment of the trial court is affirmed.

*Judgment affirmed.*

STEPHENSON and KLINE, JJ., concur.