OPINION
This is an appeal from the judgment of the Hancock County Court of Common Pleas which denied recovery to plaintiff-appellants, Diann and Joe Cramer (Cramer), in a lawsuit filed against defendant-appellees, David Bucher (Bucher), David Bucher Real Estate, Inc., William and Dorothy Glinka (Glinka), Diamond Savings and Loan Co. (Diamond), and J.R. Brondes regarding the purchase of a home in Findlay, Ohio.
The parties agree on the following facts. The Glinkas owned a property located at 2210 Beecher Street in Findlay, Ohio. The Glinkas decided to sell the home through David Bucher Real Estate, Inc. with Bucher as their real estate agent. The Cramers, through their real estate agent, David Stokes, submitted a written offer titled "Offer to Purchase" in the amount of $30,000 for the property at 2210 Beecher Street. Stokes delivered the offer to David Bucher Real Estate on January 6, 1992 between 4:00 and 6:00 p.m. During the morning of January 7, 1992, Bucher viewed the offer and telephoned the Cramers. During that call, he informed the Cramer's that because the property was in foreclosure, Diamond Savings and Loan had to approve any offer submitted for 2210 Beecher Street. On January 7, 1992, at 1:02 p.m., Bucher faxed the Glinkas the Cramers' Offer to Purchase upon which he had added "Subject to Release by Diamond SL" to reflect the previous discussion between the Glinkas and Bucher. Later on January 7, 1992, the Glinkas signed the offer at a line on the offer indicating "acceptance," initialed the typed addition and at 2:58 p.m., faxed the Offer to Purchase back to Bucher. Stokes also claims that on January 7, 1992, Bucher told him that the transaction between the Cramers and the Glinkas was a "done deal." On the morning of January 8, 1992, Douglas and Mary Jane Rice, through their realtor, Sue Daniels, not yet having any indication that the Cramers had agreed to the added contingency regarding Diamond, made the Glinkas an offer to buy the home on Beecher Street for $35,000. The Glinkas claim that they then told Bucher to withdraw the "counteroffer" addressed to the Cramers so that the Glinkas could accept the Rices' offer. Bucher then wrote "acceptance withdrawn," along with his signature and the date of January 8, 1992 on the bottom of the Cramers' offer to Purchase. On January 9, 1992, the Glinkas accepted the Rices' offer. Prior to the Glinkas' acceptance of the Rices' offer, the Cramers were not made aware of nor did they review a copy of the Offer to Purchase with the added condition regarding Diamond.
On January, 15, 1992, the Cramers filed a seven count complaint for specific performance and damages against Bucher, the Glinkas, David Bucher Real Estate Inc., Diamond, and J.R. Brondes, the Treasurer of Hancock County for breach of contract, negligence, misrepresentation and fraud, tortious interference with a contract, and negligence per se against Bucher for breaching his code of ethics. On June 18, 1992, the trial court dismissed count one for specific performance. On February 26, 1993, the defendants filed a motion for summary judgment which was denied by judgment entry filed January 9, 1997. On June 11 and 12, 1997, the case was tried before the trial court. On December 4, 2001, the trial court issued its judgment, finding,
"The Offer to Purchase * * * was never finalized between the parties, despite the testimony of David Stokes that David Bucher proclaimed, "its a done deal." Instead, Bucher, with the consent of the property owner, Glinka inserted into the offer of purchase the words "subject to release by Diamond Savings and Loan" and acceptance withdrawn." While this may seem to specify a formal acceptance of the original Offer to purchase, the Court finds defendant Bucher once again at the request of his client prepared a counter-offer and then never returned the Offer to purchase (now a counter offer) or "delivered" the same to David Stokes as the realtor who put the Original Offer to Purchase together for the plaintiffs."
Furthermore, the trial court found that that the Cramers failed to show by a preponderance of the evidence that Bucher and David Bucher Real Estate, Inc. committed professional malpractice. The trial court went on to explain that "[t]he Code of Ethics for Realtors as created by the National Association of Realtors establishes standards to regulate the professional conduct of its members and as such, does not constitute a standard for actionable conduct in Ohio as to the performance or non-performance by a realtor under any given circumstances."
The Cramers now appeal asserting two assignments of error. The first assignment of error asserts:
 "The trial court incorrectly entered judgment in favor of the Glinkas on the Cramers' breach of contract claim because a contract existed between the parties for the sale of 2210 Beecher Street."
The existence of a contract raises a mixed question of fact and law.Hickman v. Cole (April 7, 1999), Hancock App. No. 5-98-30. As such,
 "[w]e accept the facts found by the trial court on some competent, credible evidence, but freely review application of the law to the facts. A reviewing court should be guided by a presumption that the findings of a trial court are correct, since the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use their observations in weighing credibility of the proffered testimony." Id., quoting, McSweeney v. Jackson (1996), 117 Ohio App.3d 623, 632
The general principles of contract law govern the formation of contracts to convey real property. Century 21, Kittyhawk v. Lilly
(March 10, 1989), Montgomery App. No. 11036. To constitute a valid contract, there must be an offer on the one side and an acceptance on the other resulting in a meeting of the minds of the parties. Noroski v.Fallet (1982), 2 Ohio St.3d 77, 79. Furthermore, "a reply to an offer which purports to accept but is conditional on the offeror's assent to terms additional to or different from those offered is not an acceptance but is a counteroffer." Foster v. Ohio State University (1987),41 Ohio App.3d 86; See also Kitty Hawk, supra.
In this case, the Glinkas did not accept the Cramers' offer as submitted; rather, the Glinkas accepted the Cramers' offer conditioned on the approval of Diamond. This condition changed the acceptance into a counter-offer which the Cramers were required to accept in order to form a valid contract. However, the Cramers did not accept the counter-offer. In fact, the Cramers admit that they were not even informed of Diamond's role in the transaction until January 10, 1992. As the Cramers had not accepted the Glinkas' counter-offer, the Glinkas were free to accept the Rices' offer to purchase. While the Cramers argue that the statement "acceptance withdrawn" is proof that the Glinkas accepted the Cramers' offer and a valid contract was formed, the trial court was free to believe Bucher and the Glinkas that the writing was a mistake and was intended to read "counter-offer withdrawn." Similarly, the disputed conversation between Bucher and Stokes was also within the prerogative of the trial court to weigh and in any event, standing alone, would not have been binding on the Glinkas. In sum, we cannot find that the trial court erred in finding that no contract was ever formed between the Glinkas and the Cramers for the purchase of the 2210 Beecher Street property and the Cramers' first assignment of error is overruled.
The second assignment of error provides:
 "The trial court incorrectly entered judgment in favor of Bucher and Bucher Realty on the Cramer's asserted negligence claim."
In this case, the Cramers assert that Bucher and Bucher Real Estate committed professional negligence by violating The Code of Ethics of and Standards of Practice of the National Association of Realtors. However, the Cramers failed to provide and this court could not find any authority for this proposition.[1] However, we did find authority to the contrary. See e.g. Stump v. Ploutz (March 4, 1983), Athens App. No. 1119 (affirming a trial court decision which found the canons of ethics for realtors to be irrelevant when establishing liability for negligence). As such, we find that the trial court did not err by determining that "the National Association of Realtors * * * does not constitute a standard for actionable conduct in Ohio as to the performance or non-performance by a realtor under a given set of circumstances."
Based on our analysis of the first assignment of error, and given the trial court's prerogative to weigh the evidence and credibility of the witnesses, we find that the judgment that plaintiff failed to establish any claim of negligence, was not against the manifest weight of the evidence. Accordingly, the Cramer's second assignment of error is also overruled and the judgment of the trial court is affirmed.
Judgment Affirmed.
BRYANT and HADLEY, J.J., concur.
[1] The Cramers rely on the case Bowling Transp., Inc. v. Gregg(1995), 103 Ohio App.3d 539. to support their assertion, however, this case involves the standards to which auctioneers are held.