[Cite as *Cieslak v. M&C Excavating & Septic Sys.*, 2014-Ohio-3660.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

|  |  |  |
|---|---|---|
| BERNADETTE CIESLAK, et al., | : | CASE NO.  CA2014-02-026 |
| Plaintiffs-Appellees, | : | |
| | : | O P I N I O N<br>8/25/2014 |
| - vs - | : | |
| | : | |
| M&C EXCAVATING<br>AND SEPTIC SYSTEMS, | : | |
| | : | |
| Defendant-Appellant. | : | |
| | : | |

CIVIL APPEAL FROM BUTLER COUNTY AREA II COURT
Case No. CFV1100940

Robinson, Lipnickey & Jones Co., L.P.A., Tara R. Jones, 14 W. Park Place, Suite D, Oxford, Ohio 45056, for plaintiffs-appellees

Timothy R. Evans, 110 N. Third Street, Hamilton, Ohio 45013, for defendant-appellant

**M. POWELL, J.**

{¶ 1}   Defendant-appellant, M&C Excavating and Septic Systems (M&C), appeals a decision from the Butler County Area II Court granting judgment in favor of plaintiffs-appellees, Bernadette and Matthew Cieslak, and awarding them $7,550 in damages for their septic system.

{¶ 2}   In April 2009, the Cieslaks purchased a residential property in Hamilton, Ohio

(the property) and subsequently rented it. The property used a septic system which consisted of a septic tank, a leach field, and the associated piping. In September 2009, after their tenants experienced problems with toilets and their bathtub, the Cieslaks had the septic tank pumped by a third party. This did not correct the problem, however. Consequently, the Cieslaks called M&C in October 2009; Wayne Neely (Neely) came to the property. Neely is the son of Michael Neely (Mike Neely) whose wife owns M&C. Mike Neely works for M&C; Neely does so as well, occasionally.

{¶ 3} Upon inspecting the septic system, Neely told the Cieslaks that both the discharge pipe from the septic tank leading to the leach field and the four-inch leach lines were failing and needed to be replaced by eight-inch pipes. Neely also noticed that the septic tank was old and missing a baffle. According to Matthew Cieslak, Neely did not address the tank with him at all. According to Neely, he told the Cieslaks about the tank. The Cieslaks paid Neely $1,250 as a down payment for the work. The receipt for the deposit was on M&C letterhead.

{¶ 4} Neely performed the work when the Cieslaks and their tenants were out of town. According to Neely, he replaced the pipe coming out of the tank with a four-inch pipe, replaced the existing leach lines with eight-inch leach lines, and connected the four-inch pipe with the new leach lines with a reducer. He also installed a baffle in the tank.

{¶ 5} In December 2009, sewage began pooling in the backyard. After multiple calls from the Cieslaks, Neely and his father came to the property in the spring of 2010. The Neelys told the Cieslaks that because of the tenants' heavy use of water, the leach field was not big enough. Subsequently, M&C extended the leach lines. In the summer of 2010, several sewage pools appeared in the backyard. Matthew Cieslak rented a bobcat and filled the sewage pools with dirt. In October 2010, the tenants once again experienced problems with toilets and their bathtub. Matthew Cieslak inspected the septic tank, saw that it was full,

and had it pumped. The Cieslaks then called Napier Plumbing & Mechanical, a plumbing company they had used before.

{¶ 6}   James Napier came to the property in November 2010. The septic tank was once again full. Upon inspecting the septic system, Napier noticed that the pipe between the house and the septic tank was crushed and had collapsed. Napier replaced the pipe with a new four-inch pipe. The Cieslaks paid him $800 for the work. Issues with the septic system continued however. Napier came back to the property in December 2010.

{¶ 7}   Napier determined that the septic system was not leaching and the leach field was full of fecal matters. Upon inspecting the septic tank, Napier observed that it did not have either a skimmer or a baffle, both critical components of a septic tank; there were cracks on both sides of the tank; there was a gaping hole on the end of the tank connecting to the leach field; and the tank was missing "a big chunk" of concrete near the gaping hole. Napier also observed that the pipe connecting the tank to the leach field was an eight-inch pipe rather than a four-inch pipe, the pipe was "sticking inside of the tank," and there was no sealant.

{¶ 8}   With regard to the gaping hole, Napier explained it looked like as if it had been "beat out" to fit the eight-inch pipe into the tank. Napier also explained that whenever the hole had been knocked in the tank, "it actually broke the corner of it down and it, actually the lid was collapsing on top of it." Because of its numerous problems, the tank was not safe, was on its way to collapse, and had to be replaced. Consequently, Napier replaced the tank with a new, 1,200-gallon tank, ran a four-inch pipe from the tank and connected it to an eight-inch leach pipe with a reducer, added a new leach field, and installed a diverter valve to divert the septic system into the new leach field to allow the other leach field to dry out. The invoice for this work was $8,700.

{¶ 9}   On October 20, 2011, the Cieslaks filed a complaint against M&C for breach of

contract, breach of duty of workmanlike performance, and unjust enrichment. A hearing was held before a magistrate. At issue were whether Neely was an agent of M&C, performed the job in a workmanlike manner, and caused damage to the septic tank resulting in the tank having to be replaced. Also at issue was the amount of damages to be awarded to the Cieslaks as a result of Neely's performance. The Cieslaks, Neely, Mike Neely, Napier, a former tenant of the Cieslaks, and the director of the Butler County Health Department testified at the hearing.[1]

{¶ 10} On December 1, 2012, the magistrate granted judgment in favor of the Cieslaks and awarded them $8,350 in damages. The magistrate found that Neely was an agent of M&C and thus, M&C was liable for the work performed by Neely. The magistrate also found that M&C caused the damages to the septic system which resulted in the replacement of the septic tank.

{¶ 11} M&C filed objections to the magistrate's decision. M&C argued the magistrate erred in finding that Neely was an agent of M&C. M&C also challenged the amount of the damages award on the ground the Cieslaks failed to prove their damages were caused by either M&C or Neely.

{¶ 12} On January 13, 2014, the trial court overruled in part and granted in part M&C's objections. The trial court found that Neely was an agent of M&C, did not perform his job in a workmanlike manner, and caused damages to the septic system. As a result, the trial court found that M&C was liable for the damages caused by Neely. The trial court, however, reduced the magistrate's damages award by $800, and awarded $7,550 in damages to the

---

1. At the hearing, after the Cieslaks rested their case, M&C orally moved to dismiss the case on the grounds the Cieslaks had failed to prove that Neely was an agent of M&C and that the various damages to the septic system were caused by Neely and/or M&C. The magistrate took the motion under advisement. M&C renewed its motion to dismiss at the close of its case. The magistrate never ruled on the motion. However, by granting judgment in favor of the Cieslaks, we presume the magistrate overruled it. *Woodworking Shop, L.L.C. v. Shay*, 12th Dist. Butler No. CA2009-12-298, 2010-Ohio-4568, ¶ 4, fn. 1.

Cieslaks.

{¶ 13} M&C appeals, raising one assignment of error:

{¶ 14} THE COURT ERRED WHEN IT FAILED TO GRANT DEFENDANT'S MOTION TO DIMISS AND THE JUDGMENT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE CONTRARY TO LAW AND IS NOT SUSTAINED BY SUFFICIENT EVIDENCE.

{¶ 15} M&C argues the trial court erred in finding that Neely was an agent of M&C when he performed work on the Cieslaks' septic system. M&C also argues the trial court erred in awarding damages to the Cieslaks.

{¶ 16} An agency by estoppel is created where a principal holds an agent out as possessing authority to act on the principal's behalf, or the principal knowingly permits the agent to act as though the agent had such authority. *Cyrus v. Home Depot USA, Inc.*, 12th Dist. Clermont No. CA2007-09-098, 2008-Ohio-4315, ¶ 11, citing *McSweeney v. Jackson*, 117 Ohio App.3d 623, 630 (4th Dist.1996). The burden of proving the existence of an agency relationship rests upon the party asserting the agency. *See Akers v. Classic Properties, Inc.*, 12th Dist. Warren No. CA2003-03-035, 2003-Ohio-5436.

{¶ 17} "For a principal to be bound by an agent's acts, the evidence must show that: 1) the defendant made representations leading the plaintiff to reasonably believe that the wrongdoer was operating as an agent under the defendant's authority; and 2) the plaintiff was thereby induced to rely upon the ostensible agency relationship to his or her detriment." *Cyrus* at ¶ 11, citing *Shaffer v. Maier*, 68 Ohio St.3d 416, 418 (1994). The apparent power of an agent is to be determined by the acts of the principal, and not by the acts of the agent. *See Schaffer* at 419; *Sevruk v. Carr*, 12th Dist. Butler No. CA2002-01-022, 2002-Ohio-4707.

{¶ 18} Upon recognizing there was conflicting evidence and resolving it in favor of the Cieslaks, the trial court found that Neely was an agent of M&C on the following grounds:

The evidence was that M&C is a family-owned business and that

> Wayne Neely is a part of that family. This court also finds that, because the [Cieslaks] called M&C's phone number; that because Mike Neely, as owner of M&C, went with his son, Wayne, to the Cieslaks' property in order to address the issues; that, because on at least one occasion, Wayne went to the property in an M&C truck; that because the receipt for the deposit paid by the Cieslaks was on M&C letterhead; and that because M&C applied for a work permit with the Butler County Health Department, there was sufficient evidence to prove that M&C had been hired by the [Cieslaks] to do the plumbing work and that Wayne Neely was acting as an agent on behalf of M&C. M&C is therefore a proper party Defendant and is liable for the damages caused by its agent, Wayne Neely.

{¶ 19} The existence of an agency relationship is a question of fact. *McSweeney*, 117 Ohio App.3d at 631. Consequently, a reviewing court will not overrule reasonable conclusions by the trier of fact simply because the reviewing court might not have reached the same result. *Id.* While there is conflicting evidence in this case, we find that the trial court's decision was supported by the record and that it was reasonable to conclude that an agency relationship existed between M&C and Neely. *Id.*

{¶ 20} We therefore hold that the trial court did not err in finding that Neely was an agent of M&C when he performed work on the Cieslaks' septic system. We now address the amount of damages awarded to the Cieslaks by the trial court.

{¶ 21} The Cieslaks sought $13,350 in damages, to wit: $3,150 paid to M&C and/or Neely to fix the septic system; $700 paid to pump the septic tank, grade the yard, and haul away raw sewage; $800 paid to Napier to install a new pipe from the house to the septic tank; and $8,700 for a new septic tank. The magistrate rejected the Cieslaks' contention that a septic system should last forever and instead found "that there is some depreciation to a septic system." Accordingly, the magistrate reduced the award sought by $5,000 and awarded the Cieslaks $8,350 in damages.

{¶ 22} M&C objected to the damages award on the ground, inter alia, that the $800 paid to Napier to install a new pipe between the house and the septic tank was not related to

any of the work performed by Neely or M&C. The trial court agreed:

> Napier testified that he could not correlate the damage between the house and the tank to any of the work performed by M&C. It appears, instead, that this damage was independent of any of the work performed by M&C. * * * This court finds, however, that in all other respects, the damages are properly attributable to M&C.

Consequently, the trial court subtracted the $800 paid to Napier from the magistrate's $8,350 award and awarded the Cieslaks $7,550 in damages.

{¶ 23} On appeal, M&C challenges the damages award on the ground that "the only evidence was the cost of replacing the septic tank and there was no evidence of the difference in fair market value of the property before and after the damage, which is the actual measure of damages." However, M&C failed to raise this issue with the trial court in its objections to the magistrate's decision, does not claim plain error here, and is consequently precluded from raising this issue on appeal. *See* Civ.R. 53(D)(3)(b); *Chivukula v. Williams*, 12th Dist. Butler No. CA2009-07-187, 2010-Ohio-1634, ¶ 9-10.

{¶ 24} M&C also argues "there was no evidence as to the amount of damage, if any, caused by M&C Excavating or Wayne Neely." In addition, "the magistrate awarded $8,350.00 later reduced to $7,550.00 by the court without any justification on how it arrived at the figure."

{¶ 25} The trial court found, and we agree, that the "magistrate did provide his explanation regarding his assessment of the costs[.]" The magistrate's decision to award $8,350 to the Cieslaks was based upon the costs incurred by the Cieslaks between November 2009 and December 2010 as broken down in the magistrate's findings of facts, and the magistrate's determination to reduce the Cieslaks' claim by $5,000 to account for septic system depreciation. While the magistrate did not explain how he arrived at the $5,000 figure, M&C never raised this specific issue in its objections to the magistrate's

decision and has therefore waived it on appeal. *See Chivukula*, 2010-Ohio-1634.

{¶ 26} We further find the record supports the trial court's award of $7,550 in damages to the Cieslaks. It is true that Napier did not know who or what caused the damage to the septic tank, which included the gaping hole and the missing chunk of concrete. However, the record shows that pools of sewage did not start to appear in the backyard until after Neely replaced the pipe connecting the tank to the leach field in October 2009.

{¶ 27} Neely testified he replaced that pipe with a four-inch pipe which he then connected to an eight-inch pipe by using a reducer. He also testified he installed a baffle in the septic tank as the latter was missing one. Yet, when Napier inspected the septic tank over a year later, the tank did not have a baffle and the pipe connecting the tank to the leach field was not a four-inch pipe but rather, was an eight-inch pipe that had been forcefully inserted into the tank. Further, Napier did not find a reducer. At the hearing, Neely's only possible explanation as to why Napier did not find a baffle was that "the glue didn't attach." He also could not explain why Napier did not find a reducer. While the tank had several issues not necessarily related to Neely's work, it did not have a baffle and had to be replaced. Napier testified that a septic tank without a baffle is "worthless". Further, the trial court did not award the full cost of replacing the tank but rather upheld the magistrate's subtraction of $5,000 for depreciation.

{¶ 28} With regard to the other costs sought by the Cieslaks, each of the amounts is supported by the record and the Cieslaks' exhibits. At the outset, we find that the trial court properly declined to award $800 to the Cieslaks for Napier's replacement of the pipe between the house and the septic tank as there was no correlation between the damage to that pipe and Neely's work. The $700 sought by the Cieslaks were incurred after sewage pools appeared in the backyard following Neely's work in October 2009. Specifically, Matthew Cieslak testified he rented a bobcat to fill the sewage pools with dirt in the summer of 2010,

and had the septic tank pumped in November 2010 prior to Napier's first visit.

{¶ 29} The Cieslaks also sought $3,150 in damages for the amount they paid Neely for his work. The parties do not dispute that the Cieslaks paid Neely $1,250 as a down payment. Matthew Cieslak testified they later paid an additional $1,900 to Neely. By contrast, Neely testified he only received $1,250 from the Cieslaks. However, the carbon copy of the receipt Neely gave to the Cieslaks shows an additional amount paid by the Cieslaks (it is not clear if that amount is $1,400 or $1,900). The additional amount is written in black ink in contrast to the faded grey handwriting for the $1,250 down payment. Neely testified he did not know if he wrote the additional amount on the receipt but admitted it looked like his handwriting.

{¶ 30} In light of the foregoing, we find that the trial court did not err in awarding $7,550 in damages to the Cieslaks. M&C's assignment of error is accordingly overruled.

{¶ 31} Judgment affirmed.

HENDRICKSON, P.J., and PIPER, J., concur.