[Cite as *Fuller v. Anchor Pointe Marina*, 2017-Ohio-8921.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

Scott T. Fuller, et al.                                          Court of Appeals No. L-17-1051

      Appellants                                           Trial Court No. CI0201502807

v.

Anchor Pointe Marina                                     **DECISION AND JUDGMENT**

      Appellee                                              Decided: December 8, 2017

* * * * *

Matthew O. Hutchinson, for appellants.

Gene Canestraro and Stephen C. Roach, for appellee.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} This is an appeal from the judgment of the Lucas County Court of Common Pleas, granting summary judgment in favor of appellee, Anchor Pointe Marina, on appellants', Scott and Doll Fuller, claims for damage to their boat, loss of value of their dock space, and personal injury. For the reasons that follow, we affirm, in part, and reverse, in part.

## I. Facts and Procedural Background

{¶ 2} The claims in this case arise from appellants' ownership of a boat and dock space at appellee's marina. In October 2012, appellants and appellee entered into an agreement for appellee to store their boat over the winter. During that winter, water froze inside of the boat causing extensive damage, and the boat was deemed a total loss. The damage resulted from the fact that the drain plugs were not pulled prior to the boat being stored.

{¶ 3} Relative to the failure to remove the drain plugs, the terms of the "Winter Boat Storage Worksheet" specifically state in two separate places that "Removal of Drain Plugs & Batteries are the boat owner's responsibility," and "[Appellee] is not responsible for any damaged, lost, or stolen items, or removal of batteries and drain plugs." Further, the "Winter Boat Storage Agreement" expressly provides that "This agreement is for rental of ground space and is not a bailment agreement. Therefore, [appellee] has no responsibility for damage to the boat and owner agrees to provide his own insurance on the boat."

{¶ 4} The parties originally agreed as indicated on the "Winter Boat Storage Worksheet" that the boat was to be removed from the water on October 29, 2012. Mr. Fuller was present that day to remove the drain plugs and battery from his boat. However, he was informed that the boat could not be removed at that time because of the weather. Mr. Fuller advised appellee that he was unable to return to have the boat removed because of his work schedule. He testified in his deposition that he was told by

2.

Donna, an office worker who has since passed away, to leave the boat near the sling, and when appellee resumed pulling boats from the water they would pull his. After he tied his boat near the sling, Mr. Fuller reminded Donna that his boat needed to be plugged in so that the batteries would not run out of power causing his boat to sink. He paid his bill at the time, and was told by Donna that "We'll take care of it."

{¶ 5} The next day, Mr. Fuller called appellee to see if his boat had been pulled from the water, and he was told that it had not been. The day after that, Mr. Fuller called again, and again was told that the weather was preventing the removal of any boats. Mr. Fuller testified that two days later he called for a third time, asking if his boat had been pulled. He stated that Donna told him, "Yep, we took care of everything, we got it winterized, shored, everything's taken care of. You don't have to worry about nothing."

{¶ 6} Mr. Fuller testified that he never specifically said anything to Donna about removing the drain plugs. However, he stated that when he left the boat at the sling, he spoke with a mechanic who was there, and opened up his boat and showed the mechanic where the drain plugs were, and told the mechanic to take care of it. Mr. Fuller testified that the mechanic replied "Yep, no problem."

{¶ 7} After the boat was deemed a total loss by appellants' insurance company, appellants purchased a new boat. The new boat was larger than the previous one, and would not fit in appellants' dock space. Appellants requested that they be assigned a larger dock space, but appellee refused. Appellants ultimately were directed to a docking space along the shoreline wall.

3.

**{¶ 8}** Mr. Fuller testified that after he had been docked along the wall for one or two weeks he came to do some work on his boat on June 5, 2013. It was a warm, sunny day, and Mr. Fuller had made several trips from his truck onto his boat carrying the tools and items that he would need. He testified that on his third or fourth time getting onto the boat he tripped and fell over a metal conduit that was attached to the shoreline wall. Mr. Fuller admitted that nothing was obstructing his view of the conduit, and he knew that the conduit was there. As a result of his fall, Mr. Fuller broke his right shoulder.

**{¶ 9}** On May 28, 2015, appellants filed their three-count complaint, asserting claims for damage to the boat, loss of value of the dock space, and personal injury. Appellee answered and filed a counterclaim for past due assessments related to appellants' ownership of the dock space.

**{¶ 10}** On July 20, 2015, appellee moved for summary judgment on appellants' claims. Appellee argued that it was not liable for the damages to appellants' boat because the "Winter Boat Storage Agreement" expressly stated that it was not a bailment agreement, disclaimed any liability for damage to the boat, and contained a release of all claims and damages. Further, appellee argued that it was not liable for appellants' claim for the loss of value of the dock space because appellants chose to purchase a larger boat that did not fit, and thus any alleged wrongful conduct on the part of appellee was not a proximate cause of appellants' damages. Finally, appellee argued that it was entitled to summary judgment on appellants' personal injury claim because the hazard that caused the fall was a known condition to Mr. Fuller, and it was open and obvious.

4.

{¶ 11} Appellants responded to the motion for summary judgment, and argued that a bailment agreement arose and superseded the "Winter Boat Storage Agreement" when appellee was unable to remove the boat from the water on October 29, 2012, and told Mr. Fuller that "it would take care of it" and haul it out without his presence.  As to the claim for loss of value of the dock space, consistent with their complaint, appellants argued that appellee drove down the resale value of appellants' dock space by subsequently offering free dock space to anyone who was willing to pay an $800 assessment fee for five years. Finally, regarding the personal injury claim, appellants argued that either appellee was negligent per se because the conduit violated the building code, the placement of the conduit was willful and wanton misconduct, or the hazard was not open and obvious because it was in a location where a person's focus would be diverted towards stepping onto the boat.

{¶ 12} Appellee replied, and, inter alia, argued that the statements of the deceased office worker that appellants relied on to create the bailment agreement were inadmissible hearsay because they did not fall under Evid.R. 804(B)(5) governing statements by a deceased person.

{¶ 13} On August 25, 2016, the trial court granted appellee's motion for summary judgment.  As to the count for damage to the boat, the trial court reasoned that the "Winter Boat Storage Agreement" disclaimed any liability on the part of appellee, and expressly did not create a bailment agreement.  Further, the court found that the exculpatory clause was not unenforceable as against public policy.  Regarding appellants'

5.

assertion of a subsequent bailment agreement, the trial court found that there was no admissible evidence to support appellants' claim because the statements of the now-deceased office worker and the unidentified mechanic were inadmissible hearsay.

{¶ 14} The trial court further awarded summary judgment in favor of appellee on appellants' claim for the loss of the value of the dock, finding that, in addition to Mr. Fuller being the sole cause of his inability to use the dock space, the complaint failed to state a claim. The court noted, in particular, that the complaint alleges that appellants purchased the dock space for $3,000, but appellants admit that appellee is now offering pier spaces for $4,000 ($800 assessment per year for five years). Thus, the court concluded that appellants were not precluded from marketing their space at a profit.

{¶ 15} Finally, in regards to appellants' claim for personal injury, the trial court found that appellee did not owe a duty to Mr. Fuller because Mr. Fuller had actual knowledge of the risk, and because the condition was open and obvious.

{¶ 16} Appellants appealed the trial court's August 25, 2016 decision. However, because the trial court failed to resolve appellee's counterclaim for past due assessments, we remanded the matter to the trial court as it was not a final, appealable order. On February 6, 2017, the trial court entered its judgment granting summary judgment in favor of appellee on its counterclaim.

## II.  Assignments of Error

{¶ 17} Appellants have timely appealed the trial court's judgment, and now assert four assignments of error for our review:

6.

1.  The trial court erred in finding that the Storage Agreement and Worksheet excused Anchor Pointe of liability for its failure to remove the drain plugs from Mr. Fuller's boat.

2.  The trial court erred in excluding the statements made by Ms. Huth and the mechanic as inadmissible hearsay.

3.  The trial court erred in finding that Mr. Fuller had failed to state a claim as to the loss of value of his boat condominium, which was caused by Anchor Pointe when it started to give away boat condominiums to prospective purchasers.

4.  The trial court erred in finding that there was no genuine issue of material fact as to whether Anchor Pointe had established the open and obvious defense.

### III. Analysis

{¶ 18} We review the grant of a motion for summary judgment de novo, applying the same standard as the trial court. *Lorain Natl. Bank v. Saratoga Apts.*, 61 Ohio App.3d 127, 129, 572 N.E.2d 198 (9th Dist.1989); *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Under Civ.R. 56(C), summary judgment is appropriate where (1) no genuine issue as to any material fact exists; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the nonmoving party, that conclusion

7.

is adverse to the nonmoving party. *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978).

## A. Claim for Damage to the Boat

{¶ 19} Because appellants' first and second assignments of error both pertain to their claim for damage to the boat, we will address them together. In their first assignment of error, appellants argue that the exculpatory clauses in the "Winter Boat Storage Agreement" do not apply to the situation because the damage occurred not from the storage of the boat, but rather appellee's failure to remove the drain plugs from the boat when it hauled it out of the water. Further, as to the "Winter Boat Storage Worksheet," appellants argue that either the disclaimers of liability contained therein are unconscionable under the present circumstances, or appellee, through its agents, agreed to modify the terms of the "Winter Boat Storage Worksheet" to accept responsibility for removing the drain plugs.

{¶ 20} We initially note that, in the trial court, appellants argued that the exculpatory clauses were unenforceable as against public policy, not because the clauses were unconscionable. Regardless, we agree with the trial court's conclusion that the disclaimer of liability contained in the "Winter Boat Storage Worksheet" is enforceable. "As a general proposition, attempts to excuse liability for negligence by contract are disfavored in the law. This is especially true in the case of bailments made in the course of a general dealing with the public. Nonetheless, absent important public policy concerns, unconscionability, or vague and ambiguous terms, limiting or exculpatory

8.

provisions will be upheld." *Collins v. Click Camera & Video*, 86 Ohio App.3d 826, 832, 621 N.E.2d 1294 (2d Dist.1993). "A determination of whether a written contract is unconscionable is an issue of law." *Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, ¶ 34. "Unconscionability includes both an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." (Citations omitted.) *Id.* at ¶ 33. "The party asserting unconscionability of a contract bears the burden of proving that the agreement is both procedurally and substantively unconscionable." *Id.*

{¶ 21} Here, appellants have not provided any evidence or arguments that the agreement was procedurally unconscionable. Instead, they argue that the disclaimer of liability is unconscionable under the facts of this case where Mr. Fuller was present and ready to remove the drain plugs and battery as agreed, but appellee refused to perform its obligation of pulling the boat out of the water. Thus, while appellants have failed to satisfy their burden of showing that the agreement was unconscionable, they do raise an issue regarding whether the parties either modified the agreement, or entered into a new agreement.

{¶ 22} Appellants argue that the agreement was modified when appellee refused to pull the boat out of the water and instructed Mr. Fuller to leave the boat at the sling, with Donna stating "We'll take care of it," and the unidentified mechanic replying that it was "no problem" to take out the drain plugs. The trial court discounted appellants' arguments, finding that the statements from Donna and the mechanic were inadmissible

9.

hearsay under Evid.R. 804(B)(5). In their second assignment of error, appellants contend that the trial court erred in excluding the out of court statements because they were not hearsay, but rather admissions of a party opponent under Evid.R. 801(D)(2), which provides "A statement is not hearsay if: * * * The statement is offered against a party and is * * * (d) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship."

{¶ 23} Appellee, in opposition, argues that Evid.R. 801(D)(2)(d) does not apply because the statements were not made within the scope of the employment.[1] In support, appellee relies on an affidavit from Eric Van Duzen, Sr., an officer and member of the board of directors of appellee, in which Van Duzen states that no employee has ever been authorized to agree to remove drain plugs from boats stored at the marina. However, the issue of whether an employee was authorized to bind the company in a contractual agreement is separate from the issue of whether the statement was made within the scope of his or her employment for purposes of determining whether the statement was hearsay under Evid.R. 801(D)(2)(d). Here, the purported statements were made by employees of appellee, while they were acting on behalf of appellee, and regarding a transaction with one of appellee's customers. Therefore, we find that the out of court statements of Donna

---

[1] Appellee also contends that appellants failed to raise in the trial court the argument that the out of court statements were admissions of a party opponent, and therefore they cannot raise the issue for the first time on appeal. However, appellee did not challenge the admissibility of the statements until it filed its reply brief in support of its motion for summary judgment.

10.

and the unidentified mechanic are not hearsay, and the trial court erred in excluding those statements.

{¶ 24} Considering those statements, we now turn to the issue of whether the parties agreed to modify the "Winter Boat Storage Worksheet" to provide for appellee accepting responsibility to remove the drain plugs from the boat. Appellee contends that Donna and the unidentified mechanic lacked authority to so bind the company. Appellants, on the other hand, argue that the employees, while perhaps not possessing actual authority, nonetheless possessed implied or apparent authority.

> In order for a principal to be bound by the acts of his agent under the theory of apparent agency, evidence must affirmatively show: (1) that the principal held the agent out to the public as possessing sufficient authority to embrace the particular act in question, or knowingly permitted him to act as having such authority, and (2) that the person dealing with the agent knew of those facts and acting in good faith had reason to believe and did believe that the agent possessed the necessary authority.

*Master Consol. Corp. v. BancOhio Natl. Bank*, 61 Ohio St.3d 570, 575 N.E.2d 817 (1991), syllabus.

{¶ 25} "The existence of an agency relationship is a question of fact." *Dickinson v. Charter Oaks Tree & Landscaping Co.*, 10th Dist. Franklin No. 02AP-981, 2003-Ohio-2055, ¶ 22, citing *McSweeney v. Jackson*, 117 Ohio App.3d 623, 631, 691 N.E.2d 303 (4th Dist.1996).

11.

{¶ 26} Here, Mr. Fuller testified that Donna was the office worker for appellee, and that "She took care of everything in the office." Viewing this evidence in a light most favorable to appellants, we find that it is sufficient to create a genuine issue of material fact as to whether Donna had apparent authority to bind appellee to remove the drain plugs. As testified to by Mr. Fuller, Donna was a long-tenured worker, who handled all of the office matters. She was the person to whom he submitted his payment, was the person who directed him to leave his boat at the sling, and was the apparent contact person for removing the boat. From this evidence, a reasonable person could conclude that appellee held Donna out as possessing sufficient authority, or knowingly permitted her to act as though she had such authority, to agree to remove the boat at a later date, and to remove the drain plugs without Mr. Fuller's presence.

{¶ 27} Likewise, we hold that a genuine issue of material fact exists regarding whether the parties did in fact either create a new agreement or modify the existing one to provide for appellee to assume responsibility for removal of the drain plugs, based on Mr. Fuller's testimony that Donna told him "We'll take care of it," and later confirming that, "Yep, we took care of everything, we got it winterized, shored, everything's taken care of. You don't have to worry about nothing."

{¶ 28} Therefore, we hold that the trial court erred in granting summary judgment to appellee on appellants' first count for damage to their boat.

{¶ 29} Accordingly, appellants' first and second assignments of error are well-taken.

12.

## B. Claim for Loss of Value of Dock Space

{¶ 30} In their third assignment of error, appellants argue that the trial court erred in granting summary judgment to appellee on their claim for loss of value of their dock space. Appellants contend on appeal that a genuine issue of material fact exists whether appellee owed a fiduciary duty to all of appellee's boat condominium owners, including appellants, to maintain the market for the dock spaces, which appellee breached when it began to give away dock spaces if the new owner agreed to pay the $800 annual assessment for five years.

{¶ 31} In moving for summary judgment, appellee only argued that it was not the proximate cause of appellants' loss of value of the dock space, but rather the proximate cause was appellants' decision to purchase a boat that would not fit in their space. Appellee, however, ignored appellants' assertions in paragraphs 13 and 14 of the complaint that "Scott Fuller's old dock space is unmarketable since Anchor Pointe Marina, after Scott's dock purchased (sic) went into competition with its members by offering free dock spaces for persons who agree to pay the annual $800 assessment fees for five years. * * * Pursuant to such competition, Scott Fuller has lost the $3,000.00 investment he made in dock space C-22." Thus, the alleged cause of the loss of value was not appellants' purchase of a new boat, but rather the conduct of appellee in competing with its members. Therefore, as stated by appellants in their memorandum in opposition, appellee has not provided any factual or legal argument to support or demonstrate why it is entitled to summary judgment.

13.

{¶ 32} Furthermore, the trial court, in its decision, determined that summary judgment was appropriate because "while [Mr. Fuller] alleges he invested $3,000 in the pier space, he also admits that Anchor Pointe is now offering pier spaces at the marina for $4,000 ($800 per year for five years) to any persons interested. Thus, he admits that his investment is less than what a new purchaser would have to pay – he does not appear to be precluded from marketing his pier space at a profit." However, the trial court's finding is not consistent with the allegation in the complaint that appellee gave dock spaces away at no cost, as well as the allegation in the counterclaim that the "Declaration of Condominium Ownership" provides that "each unit owner shall pay yearly or monthly or special assessments to the defendant for the cost of maintenance, insurance, and other common area expenses and assessments of the Association." Thus, at the least, a genuine issue of material fact exists whether every dock space owner, including the owner of appellants' dock space, must pay an assessment, with the net effect that appellee is giving away for free that for which appellant paid $3,000.

{¶ 33} Therefore, because appellee did not present any evidence demonstrating that no genuine issue of material fact exists, nor articulate any relevant legal theory explaining why appellants' claim for loss of value of the dock space based on appellee's conduct in giving away dock spaces for free with a five-year commitment was untenable as a matter of law, we hold that the trial court erred in granting summary judgment to appellee.

{¶ 34} Accordingly, appellants' third assignment of error is well-taken.

14.

## C. Claim for Personal Injury

{¶ 35} Finally, in their fourth assignment of error, appellants argue that the trial court erred in determining that the metal conduit was an open and obvious condition. Relying on an expert affidavit submitted with their opposition to appellee's motion for summary judgment, appellants argue that a genuine issue of material fact existed whether the act of getting onto and off of the boat was an attendant circumstance that would have rendered the trip hazard caused by the metal conduit not open and obvious.

{¶ 36} Initially, we note that the parties do not contest that Mr. Fuller was on appellee's premises as a business invitee. "A shopkeeper owes business invitees a duty of ordinary care in maintaining the premises in a reasonably safe condition so that its customers are not unnecessarily and unreasonably exposed to danger." *Paschal v. Rite Aid Pharmacy, Inc.*, 18 Ohio St.3d 203, 480 N.E.2d 474 (1985). "A shopkeeper is not, however, an insurer of the customer's safety." *Id.* Thus, "a shopkeeper is under no duty to protect business invitees from dangers 'which are known to such invitee or are so obvious and apparent to such invitee that he may reasonably be expected to discover them and protect himself against them." *Id.*, quoting *Sidle v. Humphrey*, 13 Ohio St.2d 45, 233 N.E.2d 589 (1968), paragraph two of the syllabus.

{¶ 37} Appellants focus on whether the hazard was open and obvious. However, appellants do not address the fact that Mr. Fuller admitted that he knew the conduit was there. Regardless of whether the hazard was open and obvious, because Mr. Fuller had actual knowledge of it, appellee was under no duty to protect him from the danger. *See*

*Wicichowski v. Gladieux V. Enterprises, Inc.*, 54 Ohio App.3d 177, 179, 561 N.E.2d 1012 (6th Dist.1988) (where injured party tripped in a stairwell, "[B]ecause appellant had knowledge of the condition of the step at least equal to that of appellee, appellee did not breach any duty owed to appellant and, therefore, is not guilty of actionable negligence as a matter of law."). Further, "the plaintiff's failure to avoid a known peril is not excused by the fact that he 'did not think,' or 'forgot.'" *Raflo v. Losantiville Country Club*, 34 Ohio St.2d 1, 3, 295 N.E.2d 202 (1973). Therefore, we hold that because appellee owed no duty to protect Mr. Fuller from the trip hazard caused by the metal conduit, the trial court did not err in granting summary judgment to appellee on appellants' claim for personal injury.

{¶ 38} Accordingly, appellants' fourth assignment of error is not well-taken.

## IV. Conclusion

{¶ 39} For the foregoing reasons, we find that substantial justice has not been done the parties complaining, and the judgment of the Lucas County Court of Common Pleas is reversed, in part, and affirmed, in part. This matter is remanded to the trial court for further proceedings consistent with this decision on appellants' claims for damage to their boat and loss of value of their dock space. Pursuant to App.R. 24, the costs of this appeal are ordered to be shared evenly by the parties.

Judgment reversed, in part,
and affirmed, in part.

16.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J. _____

_____
                    JUDGE
Thomas J. Osowik, J. _____

_____
James D. Jensen, P.J. _____            JUDGE
CONCUR.

_____
                    JUDGE