[Cite as *In re D.M.*, 2017-Ohio-7113.]

## IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

IN RE:

    D.M.                                    CASE NO. 1-17-17

ADJUDICATED DEPENDENT
AND NEGLECTED CHILD.

                                          **O P I N I O N**

[RICHARD McMILLEN - APPELLANT]

IN RE:

    R.M.                                    CASE NO. 1-17-18

ADJUDICATED DEPENDENT
AND NEGLECTED CHILD.

                                          **O P I N I O N**

[RICHARD McMILLEN - APPELLANT]

Appeals from Allen County Common Pleas Court
Juvenile Division
Trial Court Nos. 2014 JG 31832 and 2014 JG 31833

**Judgment Affirmed**

**Date of Decision:   August 7, 2017**

APPEARANCES:

    *David K. Goodin* **for Appellant**

    *Mariah M. Cunningham* **for Appellee**

**ZIMMERMAN, J.,**

{¶1} This consolidated appeal involves the award of permanent custody of two minor children, D.M. (case number 2014 JG 31832) and R.M. (case number 2014 JG 31833) to the Allen County Children Services Board ("ACCSB"). Appellant, Richard McMillen ("Richard"), D.M. and R.M.'s natural father, appeals these decisions of the Allen County Juvenile Court. The mother of D.M. and R.M., who's parental rights were also terminated, did not participate in the trial court proceedings despite being properly served and has not appealed.

*Facts and Procedural History*

{¶2} On September 2, 2014, ACCSB filed complaints alleging D.M. and R.M. to be neglected and dependent children, as defined in R.C. 2151.03 and 2151.04. (Doc. 1)[1]. At the time, D.M. was five years old and R.M. was four years old. The complaints alleged problems with Richard's supervision of the children, together with allegations of substance abuse and physical abuse occurring in the home. (*Id*). The complaints also alleged that both children had developmental delays which were not being addressed by Richard. (*Id*).

{¶3} On September 3, 2014, the trial court appointed Julisa Jones, CASA as guardian ad litem ("GAL") for the children. Ms. Jones was the sole GAL throughout the proceedings.

---

[1] Since the relevant filings in each of the cases were the same, our record references will be to case 2014 JG 31832.

{¶4} ACCSB filed its first case plan on October 1, 2014 recommending that Richard complete a substance abuse/mental health assessment and follow all professional recommendations thereto; that he submit to random drug screens; that he attend and complete parenting classes; that he address the children's developmental delays and follow all recommendations thereto; that he maintain a clean and safe home; that he meet the children's basic everyday needs; that he obtain employment or apply for other subsidy benefits; and that he permit ACCSB monthly contact in order to monitor the safety and well-being of the children.

{¶5} On October 22, 2014, the trial court held an adjudicatory hearing on ACCSB's complaints. Richard, the GAL, counsel for mother and counsel for ACCSB were present. The trial court found, by clear and convincing evidence, that both D.M. and R.M. were dependent and neglected and ordered the children to remain in Richard's legal custody. (Doc. 19).

{¶6} On November 6, 2014 the trial court conducted its dispositional hearing regarding D.M. and R.M., filing its judgment entry adopting the magistrate's decision on January 5, 2015 together with the October 1, 2014 case plan. Again, the trial court permitted the children to remain in Richard's legal custody. (Doc. 33). The father did not object to the magistrate's decision or appeal the trial court's entry adopting the decision.

**{¶7}** The record discloses that throughout ACCSB's involvement, Richard struggled to comply with the case plan[2] which ultimately resulted in the trial court removing the children from Richard's custody and granting temporary custody (of D.M. and R.M.) to ACCSB on June 2, 2015. Thereafter, on July 29, 2016, ACCSB filed its motion for permanent custody of D.M. and R.M. in the trial court.

**{¶8}** The permanent custody hearing was held in the trial court on March 22, 2017. The GAL filed her final report with the trial court prior to the hearing and recommended that D.M. and R.M. be placed into the permanent custody of ACCSB. (Doc. 149). On March 29, 2017 the trial court issued its judgment entries granting permanent custody of D.M. and R.M. to ACCSB. It is from these entries, collectively, that Richard appeals, raising the following assignment of error for our review.

**ASSIGNMENT OF ERROR**

**THE TRIAL COURT'S AWARD OF PERMANENT CUSTODY OF D.M. AND R.M. TO ALLEN COUNTY CHILDREN'S SERVICES BOARD ("ACCSB") BECAUSE THE CHILDREN COULD NOT BE PLACED WITH THEIR FATHER WITHIN A REASONABLE PERIOD OF TIME WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE.**

---

[2] ACCSB filed show cause motions against Richard on February 3, 2015 and June 1, 2015.

**{¶9}** In his sole assignment of error, Richard argues that the trial court's determination that the children could not be returned to his care within a reasonable time period was not supported by clear and convincing evidence.

*Standard of Review*

**{¶10}** "[T]he right to raise a child a child is an 'essential' and 'basic' civil right. *In re Hayes*, 79 Ohio St.3d 46 (1997), citing *In re Murray*, 52 Ohio St.3d 155, 157 (1990), quoting *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208 (1972). "[P]arents have a fundamental liberty interest in the care, custody and management of their children." *In re Schaeffer Children*, 85 Ohio App.3d 683, 689 (1993), citing *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388 (1982).

**{¶11}** A court may grant permanent custody of a child under R.C. 2151.414(B)(1) if the court determines "by clear and convincing evidence that it is in the best interest of the child" and one of the four factors listed in R.C. 2151.414(B)(1)(a)-(d) applies. R.C. 2151.414(B)(1)(a) states, in relevant part, "[T]he child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents".

**{¶12}** In the case before us, the trial court considered R.C. 2151.414(E)(1) in support of its permanent custody award which provides, in its pertinent part, as follows:

> **In determining * * * whether a child cannot be placed with either parent within a reasonable period of time or should not be placed**

-5-

> **with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing * * * that one or more of the following exist as to each of the child's parents, the court *shall* enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:**
>
> **(1)  Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.**

Emphasis added.

{¶13} The Supreme Court of Ohio has held that "[c]lear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases. It does not mean clear and *unequivocal*." *In re Smith*, 3d Dist. Marion No. 9-04-35, 2005-Ohio-149, ¶ 36, quoting *Cross v. Ledford*, 161 Ohio St. 469, 477 (1954). In addition, when "the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had

sufficient evidence before it to satisfy the requisite degree of proof." *Cross*, *Id*. Thus, we are required to determine whether the evidence was sufficient for the trial court to make its findings by a clear and convincing degree of proof.

*Analysis*

{¶14} The trial court determined that a grant of permanent custody to ACCSB was in the best interest of the children. (Doc. 150). The trial court found R.C. 2151.414(E)(1) applied and found, by clear and convincing evidence, that the children could not be returned to Richard's custody within a reasonable time or should not be placed with either parent.

{¶15} In the case *sub judice*, Richard does not dispute the trial court's determination that permanent custody was in the best interest of the children. Rather, Richard argues that there was not clear and convincing evidence that the children could not be placed with him within a reasonable period of time.

{¶16} In regards to R.C. 2151.414(E)(1), the trial court made the following findings as to whether the children could be placed with Richard within a reasonable period of time:

> **8)** **Here, the Court finds that the Board has provided both reasonable case planning and diligent efforts. The issues to be confronted were the Father's continuing abuse of controlled substances, lack of stable and appropriate housing and inappropriate home conditions. The Father was given referrals for assistance in locating appropriate housing and was referred for substance abuse treatment and counseling. He was never able to secure safe and appropriate housing and chose to continue to**

**abuse controlled substances, in spite of the potential impact on the return of his children. It does not appear that he seriously attempted and was unable to discontinue using controlled substances, but instead that he chose not to do so because of his belief that his use does not interfere with his day to day living. He has tested positive for marijuana on all eight drug tests which have need [sic] administered, most recently on March 8, 2017, just fourteen days prior to the permanent custody hearing. Whether or not his substance abuse does interfere, it is clear from the evidence that, for whatever reason, he has been unable to remedy the conditions that led to his children's removal. He acknowledged that fact in testifying that "I know that I can't take care of them right now." Additionally, the fact of his transient circumstances and failure to report his whereabouts to the caseworker after his frequent moves made it difficult for the Board to provide services to the Father.**

**10) The Court finds that the minor child cannot be placed with either parent because, following placement of the child outside the home and notwithstanding reasonable case planning and diligent efforts by the Agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, both parents have failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home (R.C. 2151.414(E)(1)). The court further finds that the Child cannot be placed with the Mother within a reasonable time and should not be placed with the Mother because she has abandoned the Child (R.C. 2151.414(E)(10)).**

(Doc. 150).

{¶17} Regarding these findings made by the trial court, Richard argues that he made great strides in accomplishing the requirements outlined in the case plan. Furthermore, Richard claims he successfully completed all substance abuse assessments (Tr. 11); completed the required parenting classes (Tr. 15); obtained employment (until he fell ill) (Tr. 25); obtained a driver's license and a fork lift

operator's license (Tr. 91); regularly visited with D.M. and R.M. (Tr. 48-49); and made numerous attempts to find suitable housing. (Tr. 76, 83-84). However, Christin Winter ("Winter"), a caseworker for ACCSB, testified that even though Richard may have successfully completed his substance abuse assessment, he continued to actively abuse drugs, and failed all drug screens performed by ACCSB[3], which totaled eight failed drug tests. (Tr. 12).

{¶18} Winter further testified that despite Richard's regular attendance of visits with D.M. and R.M., concerns existed with the children "roaming the hallway" (during visits) and with Richard's decision to permit the children to play on his cell phone instead of personally interacting with them. Winter's testimony also revealed that while Richard completed the required parenting class under his case plan, he did so a year after it was ordered, completing the class after a Motion for Citation in Contempt was filed against him by ACCSB. (Tr. 15, 74).

{¶19} Additionally, Winter's testimony established that Richard had moved approximately nine times during the two (2) year period in which the case plan was open. Richard's residences included: a stay at the Royal Inn in Lima with the children; residing with friends; and his plan to "fix up" a home for him and the children, which failed to materialize. (Tr. 22, 24).

---

[3] Richard most recently tested positive for marijuana on March 8, 2017, just weeks before the permanent custody hearing. (Tr. 12).

{¶20} As to obtaining gainful employment, Richard did obtain a valid driver's license and a fork lift operator's license, which were not required under the case plan, but the record reveals that he only worked for a *total* of nine months after the adoption of the October, 2014 case plan. And, Richard quit that job and was not employed at the time of the permanent custody hearing. (Tr. 26).

{¶21} Winter also testified on the issue as to whether the children should be placed with Richard, as follows:

> Q. (Cunningham) What is the Agency asking as far as disposition in this case?
>
> A. (Winter)That both [R.M.] and [D.M.] be placed in the permanent custody of the Agency.
>
> Q. And why is the Agency making that request?
>
> A. Um, Mr. McMillen has not been able to demonstrate that he can consistently meet their needs, their basic medical and special needs. He also has not been able to maintain appropriate housing and employment.
>
> Q. Do you believe that [D.M.] and [R.M.] have a need for a legally secure permanent placement?
>
> A. I do.
>
> Q. Based on your involvement with Mr. McMillen in the past two (2) years, as well as, your training and experience in the area of child welfare, do you believe that they can be placed with Mr. McMillen within a reasonable amount of time?
>
> A. I do not.
>
> Q. And, why not?

A. Mr. McMillen has had a case with our Agency for over two (2) years now. The first year of that the children were in his custody. Um, and during all of that time he has not been able to demonstrate the things that the Agency needs to see in order to ensure that the children would be safe in his care.

Q. Do you believe there's anything further that the Agency could have done to assist Mr. McMillen in first, maintaining the children and then with reunification?

A. The Agency has exhausted all efforts to try to maintain the children in his care and custody prior to the removal. Since the removal the Agency has offered, um, referrals, recommendations, assistance, things of that nature. The Agency did offer to help Mr. McMillen pay for his housing at one (1) point given that he had employment and he paid for at least the deposit or the firsts [sic] month rent. Mr. McMillen was not able to do that at any given point during the case.

(Tr. 40-41)

**{¶22}** Most importantly, Richard *agreed* with Winter's testimony by admitting that he was *not* capable of caring for D.M. and R.M. stating "I love my kids, your Honor. I just want to be able to see them. *I know I can't take care of them right now* but, I love my kids". (Tr. 93). (Emphasis added).

**{¶23}** As we noted previously, R.C. 2151.414(E)(1) directs a trial court to a finding that a child cannot be placed with either parent within a reasonable time if it determines by clear and convincing evidence, that "[F]ollowing placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that

initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home". Here, the trial court determined that Richard's abuse of drugs, lack of stable housing and inappropriate home conditions led to the children's removal from his custody and "he has been unable to remedy the conditions". (Doc. 150, ¶8). Furthermore, Richard's admission to being unable to take care of the children, the testimony of caseworker Winter and the recommendation of the GAL (for permanent custody) all support the trial court's determination that D.M. and R.M. could not be placed with their father within a reasonable time.

{¶24} In our review of the record, we find sufficient clear and convincing evidence exists in the record to support the trial court's determination that the children cannot be returned to Richard within a reasonable period of time or should not be returned to him pursuant to R.C. 2151.414(E)(1). "A reviewing court should be guided by a presumption that the findings of the trial court are correct, since the trial court is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use their observation in weighing credibility of the proffered testimony". *Cramer v. Bucher*, 3d Dist. Hancock No. 05-02-01, 2002-Ohio-3397, ¶ 9, quoting *McSweeney v. Jackson*, 117 Ohio App.3d 623, at 632 (4th Dist., 1996). Thus, we overrule Richard's sole assignment of error.

**{¶25}** Having found no error prejudicial to appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**PRESTON, P.J. and WILLAMOWSKI, J., concur.**

**/jlr**